## ELIZA HALL

### *v.*

## GEORGE W. SROUFE.

1. ERRONEOUS INSTRUCTIONS—*will not always reverse.*   The giving of erroneous instructions will not be ground for reversal where the evidence clearly shows the verdict was right.

2. HUSBAND AND WIFE—*of the ownership of property.*   A married woman held the legal title to land to place it beyond the reach of her husband's creditors, it not having been bought with her money, and she borrowed money in her own name, giving her own notes therefor, and giving the land as security.   It was *held*, that personal property purchased by the wife with a portion of the money so borrowed, would be subject to execution in favor of a creditor of the husband.   The property would be regarded as having been purchased with the husband's money.

APPEAL from the Circuit Court of Henry county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

The opinion states the case.

Messrs. BENNETT & VEEDER, for the appellant.

Mr. M. SHALLENBERGER, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of replevin, brought by Eliza Hall, against the appellee, who was sheriff of Henry county; to recover possession of two horses which he had levied upon, under an execution against the husband of the plaintiff.   The only question is, whether the property belonged to the plaintiff or her husband.

It is urged by appellant, that the circuit court erred in the instructions, and in the admission of evidence.   But that portion of the testimony about which there is no controversy,

shows such a state of facts as to render a discussion of these questions unnecessary, for even if the instructions were erroneous, the facts proven by the husband of the plaintiff place the correctness of this verdict beyond all question. If it had been for the plaintiff, the court should have set it aside.

The plaintiff claims the horses were bought with her money. The money was a part of eight thousand dollars which was borrowed in January, 1867, from one Libby, in the State of New York, through his agent in Chicago. She gave her individual notes for the money, and a deed of trust on 720 acres of land. This land was the farm which Hall and his family had occupied, by themselves or tenants, for some years, but the legal title of which had been kept in the wife. But Hall himself was put on the stand as a witness, and testified as follows. We quote from the record:

" I don't know as I can say where she got the money to pay for the lands. Somebody might have given it to her. I don't know of her having any money when I married her. Don't know of her getting any legacy or any thing of that kind. Some four quarter sections were paid for by my wife. She never received the money from me. She bought the land from different persons. I don't remember all their names. I was living with her when she bought the lands. She got some of the money that paid for the lands from Libby. Got the money from Libby inside of two years. She probably claimed to own some of the lands before that time. I was her agent before that. I rented the lands out before that time. She might have saved money out of the rent to pay for some of the land."

There is a degree of candor in this testimony, that is both refreshing and convincing. It leaves no room for hesitation in saying, that, as she had no money when he married her, and as he does not know of her having received any since, the money which bought this farm did not belong to her, and

the title was held in her name to place it beyond the reach of his creditors. The above extract from the evidence needs no confirmation, but it is confirmed by the rest of the testimony. It follows that the money which bought these horses and which was borrowed upon the security of this farm, although in her name, must be considered as really his money, as against the creditor who had levied his execution on the horses.

*Judgment affirmed.*