ELISHA GRAY *et al.*

*v.*

WILLARD D. MERRIAM.

*Filed at Ottawa November 29, 1893.*

1. BAILEE WITHOUT HIRE—*duty—and liability.* The general rule is, that a gratuitous bailee is liable only for gross negligence, which has been defined to be the absence or want of slight care or diligence.

2. That which constitutes slight diligence or gross negligence depends in each case upon a variety of circumstances, such as the occupation, habits, skill and general character of the bailee, and local custom and business usage. Hence, gross negligence is a question of fact, upon all the evidence, for the jury.

3. Where a bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of the bailee. But still, good faith in every case requires even a bailee without reward to take reasonable care of the deposit, and what is reasonable care must materially depend upon the nature, value and quality of the thing, the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties.

4. A bank receiving government bonds on deposit without reward, is bound to exercise such reasonable care as men of common prudence usually bestow for the protection of their own property of a similar character. The exercise of reasonable care is in all such cases the dictate of good faith.

5. Gross negligence, as applied to gratuitous bailees, is nothing more than a failure to bestow the care which the property in its situation demands, and the omission of the reasonable care required is the negligence which creates the liability, and whether this existed is a question of fact.

6. The rule that a gratuitous bailee is responsible only for the want of care which is taken by the most inattentive, can not be applied to all cases of bailment without reward. Where securities are deposited with banks accustomed to receive such deposits, they are liable for any loss thereof occurring through the want of that degree of care which good business men should exercise in keeping property of such value.

7. SAME—*special deposit with bankers.* In ordinary cases of special deposits without reward, the banker, as bailee, has no right to handle or examine the property deposited, except so far as its safety may require.

8. Where a depositor of United States bonds keeps a deposit and check account with the bank, and borrows from the bank from time to time, and authorizes the bank to hold the bonds as collateral to secure the notes given for such loans, while the bonds are so held as collateral the character of the bailment will be changed from a bailment for the exclusive benefit of the bailor, to one for the mutual benefit of the bailor and bailee.

9. In an action by the depositor of government bonds against a bank for the loss of the bonds by the theft of the cashier, on the ground of negligence, evidence showing that the bonds had been pledged as collateral security for loans made by the bank to the plaintiff at various times before the bonds were stolen, and also evidence showing that the cashier had access to the bonds for the purpose of cutting off the coupons thereon up to the time of the larceny, is competent to show the relation of the parties to each other and to the property.

10. ERROR WILL NOT ALWAYS REVERSE—*instruction.* A judgment will not be reversed for error in an instruction, where it appears affirmatively that the defeated party was not injured by the error. And the absence of such injury is clearly manifest where the undisputed evidence establishes the correctness of the verdict, so that, either with or without the erroneous instruction, the verdict could not have been otherwise than it was, and had it been otherwise would have been set aside by the court.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

The following is a statement of the facts in this case as made by the Appellate Court in the opinion rendered by that Court:

"This is a suit brought by the defendant in error, Willard D. Merriam, against Elisha Gray, plaintiff in error, and Samuel A. Kean, surviving partners of the firm of Preston, Kean & Co., to recover the value of fifteen United States four per cent bonds, for $1000 each, claimed to have been left with said firm for safe keeping, and lost through the negligence of said firm.

"The firm of Preston, Kean & Co. was engaged in the general banking business in Chicago, and Merriam, defendant in error, had for several years prior to 1879 kept a running deposit and check account with them, and had at times borrowed

money of them. In February, 1879, Merriam purchased twelve of the lost bonds from or through the agency of the firm, and took them to his home in Iowa, and in the spring of the same year purchased, in a like manner, three other like bonds, which he directed the firm to keep for him. In June of the same year he borrowed of the firm $15,000, and sent them the twelve bonds he had at home to hold as collateral security, together with the other three bonds they already held for him. Whatever, if any, other transactions, by way of loans or renewals, may have occurred between the firm and Merriam after that time and before March, 1881, seem to have been settled, for on March 19 and 24, 1881, the firm wrote Merriam, sending him his canceled notes and advising him that they 'hold in special deposit, subject to your order, fifteen $1000 United States four per cent bonds, say $15,000.' It does not appear that Merriam ever had all or any one of said bonds in his actual possession, or that he ever, in fact, saw them, or either of them, after that time. He did, however, after that time, borrow small sums of the firm,—twice $500 and once $600,— and a part or all of said bonds were, by the terms of the notes given by him for the money so borrowed, pledged to the firm as collateral security. The record contains a copy of one of the notes for $500, wherein it is recited that Merriam has 'deposited with them as collateral . . . . United States bonds.' The three notes last referred to appear to have been made and paid in 1881, and subsequent to March of that year, and it does not appear that at any time subsequent to the year 1881 Merriam was indebted to the firm for borrowed money or otherwise.

"The bonds were stolen by Frederick M. Ker in 1882, while Ker was acting as assistant cashier or assistant manager of the firm in its banking business. During the time they were held as a special deposit the bonds were tied together and kept in one of the safes in the vault of the bank,—the same safe in which the cash of the bank was kept, but in a separate com-

partment of the safe,—and Ker, Mr. Kean, the managing partner, and Mr. Ware, the cashier, were the only persons who had access to the safe. The quarterly coupons for interest on the bonds, as they matured, were detached and collected by the firm so long as they remained in their possession, and the amount was credited to the general deposit account of Merriam with them, and was either remitted to him, at his request, in New York exchange, or lay subject to his check in the regular course of the firm's banking business. Merriam was also, in fact, credited with and paid by the firm, interest which matured on the bonds January 1, 1883,—a date subsequent to the time when they were taken by Ker. Ker testified that he credited Merriam's account in advance with the amount of the coupons maturing on January 1, 1883, knowing, at the time, that the bonds were not on hand, so as to anticipate any demand that Merriam might make for the coupons. With reference to the coupons which matured October 1, 1882, at which time, according to the testimony of Ker, it was uncertain whether the bonds were on hand or not, the firm wrote Merriam on October 6, 1882: 'Yours received. We credit $150—coupons. The bonds give us no trouble at all. Glad to be of service to you.'

"Ker had been in the employ of the firm for many years, and had arisen, by regular gradations, to the responsible position of assistant cashier, assumed by him in November, 1881. Very shortly afterwards, and in December, 1881, or January, 1882, rumors that Ker was speculating on the board of trade reached Mr. Kean, the active managing partner of the firm, and he spoke with Ker about it. Ker admitted that he had been speculating some, but claimed that as he was operating with his own money it was not an objectionable practice. There is some contradiction between the testimony of Kean and that of Ker as to the number of conversations between them on the subject of Ker's speculations, and as to what was said, but we fail to find in the testimony of either any forbid-

ding by Kean of further speculations by Ker. The nearest approach to it is in the testimony of Kean that he asked Ker if he did not know it was against the rule, but he fails to state that he made any reply after Ker said he would stop if it was against the wishes of the firm."

The verdict and judgment in the trial court were in favor of the plaintiff, and said judgment has been affirmed by the Appellate Court.

The instructions given for the plaintiff by the trial court are as follows:

"The jury are instructed, that if you believe, from a preponderance of the evidence, that the defendants held the bonds of the plaintiff exclusively for the benefit of the plaintiff, then the only obligation resting upon them was to exercise reasonable and ordinary care over the same. What constitutes such reasonable and ordinary care is a question of fact for the jury to determine from all the evidence in the case. It will vary with the nature, value and situation of the property. The person who holds or has the charge of the property of another under such circumstances is required to exercise the care usually and generally deemed necessary in the community for the security of a similar property under like circumstances, but nothing more. The want of ordinary and reasonable care is in law termed gross negligence. It is for you to say what the evidence is, what it proves, tends to prove or fails to prove, and the court has no right to, and must not be understood to, intimate any opinion as to any question of fact. If, from all the evidence, you find and believe that the defendants did not exercise over the bonds of the plaintiff reasonable and ordinary care, but were guilty of gross negligence in their keeping, and that by reason thereof the bonds were lost to the plaintiff, then you will find the defendants guilty."

"If the jury find the defendants guilty, they should assess the damages of plaintiff at the value of the bonds on the first day of December, 1882, and may add interest thereon from

the first day of January, 1883, to the present time, at the rate of six per centum per annum."

The instruction given for the defendant is as follows:

"If you believe, from the evidence in this case, that the bonds in question were held by the defendants and said David Preston simply as a special deposit, and while they were so in the possession of the said defendants and said David Preston they were lost or stolen, then you are instructed to find for the defendants herein, unless you further believe, from the evidence, that they were guilty of gross carelessness or negligence in the care which they took of them while they held possession thereof."

Messrs. HOYNE, FOLLANSBEE & O'CONNOR, for the plaintiffs in error:

A gratuitous bailee is liable only for gross negligence, and this is the measure of the liability of the bank, arising out of its having accepted bonds for safe keeping without reward. *Foster* v. *Essex Bank*, 17 Mass. 479; *Whitney* v. *Bank*, 35 Vt. 154; *Bank* v. *Rex*, 89 Pa. St. 308; *Tompkins* v. *Salt Marsh*, 14 S. &. R. 275; *Gibbin* v. *McMullin*, 2 L. R. P. C. 317.

As to the care required of such a bailee, and what is gross negligence, see *Railway Co.* v. *Southworth*, 32 Ill. App. 313; *Skelley* v. *Kahn*, 17 Ill. 170; *Railroad Co.* v. *Carrow*, 73 id. 348; *McGrath* v. *Railroad Co.* 32 Barb. 151; *Brand* v. *Railroad Co.* 8 id. 378; Schouler on Bailments, 15.

Mr. ROBERT HERVEY, and Mr. C. STUART BEATTIE, for the defendant in error:

The bank was a bailee for the defendant in error, although he had no indebtedness when the bonds were actually lost. *Bank* v. *Boyd*, 44 Md. 47; *Cutting* v. *Marlor*, 78 N. Y. 458; *Preston* v. *Prather*, 137 U. S. 604.

The defendant was entitled to recover if the loss of the bonds occurred through the failure of the bank to use such

care as persons of common prudence, in their situation and business, usually bestow in the keeping of similar property belonging to themselves. *Mowry* v. *Coyle,* 34 Md. 235; *Pattison* v. *Bank,* 98 N. Y. 487; *Garley* v. *Bank,* id. 487.

No reversal will be had for a harmless error in an instruction. *Hall* v. *Sroufe,* 52 Ill. 421; *Burling* v. *Railroad Co.* 85 id. 18; *Hubner* v. *Feige,* 90 id. 212; *Endsley* v. *Johns,* 120 id. 447; *Rolling Stock Co.* v. *Wilder,* 116 id. 100.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The main error assigned is the giving of the first instruction given by the trial court for the plaintiff. It is claimed by plaintiff in error, that the defendant bankers were gratuitous bailees, holding the bonds in controversy as a special deposit for safe-keeping without reward. The general rule is, that a gratuitous bailee is liable only for gross negligence. (Story on Bailments, secs. 62 and 79—9th ed.; Schouler's Bailments and Carriers,—2d ed.—sec. 35; *Skelley* v. *Kahn,* 17 Ill. 170.) The instructions for both plaintiff and defendants require the jury to find, that the defendants were guilty of gross negligence in the keeping of the bonds, as a condition to the right of recovery. But the objection made to plaintiff's instruction is the definition, which it gives of gross negligence, in the use of the following clause: "The want of ordinary and reasonable care is in law termed gross negligence." Gross negligence has been defined to be the absence or want of slight care or diligence. (Story on Bailments, secs. 62, 64; Schouler's Bailm. & Carriers, secs. 15, 35; *M. C. R. R. Co.* v. *Carrow,* 73 Ill. 348; *C., B. & Q. R. R. Co.* v. *Johnson,* 103 id. 512.) But the portions of the instruction, which precede and follow said clause, are in harmony with much of the language used in the text books and decisions. Schouler, in his recent work on Bailments and Carriers (sec. 35), after announcing that the gratuitous bailee is liable only for slight care and diligence according to the circumstances and cannot be held for loss or

injury unless grossly negligent, says: "This statement of the rule, though strongly buttressed upon authority, fails at this day of universal approval in our jurisprudence.    *    *    * 'Slight,' 'ordinary' and 'great' are terms they (some courts) wish to see discarded; and they prefer judging of each case by its own complexion." The same author states, that, in the main, gross negligence is a question of fact upon all the evidence for the jury; and that what constitutes slight diligence, or gross negligence, will depend in each case upon a variety of circumstances, such as the occupation, habits, skill and general character of the bailee, and local custom and business usage.    (Schouler on Bailm. and Car. secs. 49, 50). Story, after stating the rule that, when the bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of the bailee, subsequently adds that, in every case, good faith requires a bailee without reward to take reasonable care of the deposit; "and what is reasonable care must materially depend upon the nature, value and quality of the thing, the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties." (Story on Bailm. secs. 23 and 62).

In *Smith* v. *First National Bank in Westfield,* 99 Mass. 605, which was an action against a bank for the conversion or loss by gross negligence of valuable articles deposited with it as a bailee without hire, the court said: "This was a gratuitous bailment.    The defendants are liable only for want of ordinary care."

A deposit is a naked bailment of goods to be kept for the bailor without recompense, and to be returned when the bailor shall require it, while a mandate is a bailment of goods without reward to be carried from place to place, or to have some act performed about them.    (Story on Bailm. secs. 4 and 5). But a mandatary, like a depositary, is said to be bound only to slight diligence and responsible only for gross neglect. (Story on Bailm. sec. 174).    In *Skelley* v. *Kahn, supra,* we held that

"a mandatary or bailee who undertakes without reward to take care of the pledge, or perform any duty or labor, is required to use in its performance such care as men of common sense and common prudence, however inattentive, ordinarily take of their own affairs, and they will be liable only for bad faith, or gross negligence, which is an omission of that degree of care."

The liability of banks, acting as bailees without reward in the care of special deposits, has been recently considered in the case of *Preston* v. *Prather*, 137 U. S. 604; and it was there held, that such bailees are bound to exercise such reasonable care as men of common prudence usually bestow for the protection of their own property of a similar character; that the exercise of reasonable care is in all such cases the dictate of good faith; and that the care usually and generally deemed necessary in the community for the security of similar property, under like conditions, would be required of the bailee in such cases, but nothing more. Gross negligence, as applied to gratuitous bailees, is defined in that case to be "nothing more than a failure to bestow the care which the property in its situation demands;" and the court further says: "the omission of the reasonable care required is the negligence which creates the liability, and whether this existed is a question of fact for the jury to determine."

In the light of these more liberal views as to the liabilities of bailees without reward, we think that the clause in question when considered in connection with the rest of the instruction, could only have been understood by the jury as referring to the want of such ordinary and reasonable care as was designated in the previous part of the instruction, that is to say, the care usually and generally deemed necessary in the community for the security of similar property under like circumstances. The rule, that a gratuitous bailee is responsible only for the want of care which is taken by the most inattentive, cannot be applied to all cases of bailment without reward. When securities are deposited with banks accustomed to re-

ceive such deposits, they are liable for any loss thereof occurring through the want of that degree of care, which good business men should exercise in keeping property of such value. (*Bank* v. *Zent*, 39 Ohio St. 105; 16 Am. & Eng. Enc. of Law, pages 160 and 206).

But if it be conceded, that the definition of gross negligence in the clause above quoted, even when considered in connection with the balance of the instruction, is technically inaccurate, it does not follow that plaintiff in error is entitled to a reversal of the judgment in this case. A judgment will not be reversed for error in an instruction when it appears affirmatively, that the defeated party was not injured by the error. The absence of such injury is clearly manifest when the undisputed evidence establishes the correctness of the verdict, so that, either with or without the erroneous instruction, the verdict could not have been otherwise than it was; and, had it been otherwise, would have been set aside by the court. (*Hall* v. *Sroufe*, 52 Ill. 421; *Burling* v. *I. C. R. R. Co.* 85 id. 18; *Hubner* v. *Feige*, 90 id. 208; *C., B. & Q. R. R. Co.* v. *Warner*, 108 id. 538; *United States Rolling Stock Co.* v. *Wilder*, 116 id. 100; *Town of Wheaton* v. *Hadley*, 131 id. 640).

The defendants in this case did a regular banking business. The plaintiff kept a deposit and check account with them. He borrowed money from them from time to time, and authorized them to hold the bonds in question as collaterals to secure the notes given for such loans. While the bonds were thus held as collaterals, the character of the bailment was changed from a bailment for the exclusive benefit of the bailor to one for the mutual benefit of the bailor and bailee. (*Preston* v. *Prather*, *supra*). In ordinary cases of special deposits without reward, the banker has no right to handle or examine the property except so far as its safety may require. But, here, the bankers had access to the package containing the bonds, and detached the interest coupons when they fell due, and collected the interest, and deposited it to the credit of the plaintiff to be checked

out by him in the regular course of business. *(National Bank v. Graham,* 100 U. S. 699 ; *Whitney* v. *National Bank,* 55 Vt. 154).

Ker, the assistant cashier of the bank, stole the bonds in the summer of 1882. He had access to these bonds and to the other special deposits kept by the bank in its vault. About a year before he absconded, Kean, the chief officer of the bank, had his attention called to the fact that Ker was speculating upon the Board of Trade in Chicago, and had a conversation upon the subject with him. Ker was not known to have any other property than his salary of $1800.00. He was, however, allowed to retain his position in the bank, and no effort was made to verify the truth of the statements made as to his speculations, and no examination was made to ascertain whether he was using monies which did not belong to him. About two months before he absconded, the subject of his speculations was again called to the attention of the chief officers of the bank through an anonymous communication, and Kean had a second interview with him in relation to his conduct in this regard. "The defendants then entered upon an examination of their books and securities, but made no effort to ascertain whether the special deposits had been disturbed." *(Preston* v. *Prather, supra.)* The facts thus detailed are undisputed and are established by the evidence of the defendants themselves.

In *Preston* v. *Prather, supra,* an action was brought in the Circuit Court of the United States by parties in Missouri doing business under the firm name of the Nodaway Valley Bank of Maryville against the same bankers, who are defendants in the present suit, to recover the value of United States bonds held as a special deposit, and stolen by the said Ker about the same time when he appropriated the bonds in controversy here. The Prather case was tried by agreement before the Federal Circuit Judge without a jury, resulting in judgment for the plaintiffs, and was taken afterwards to the Supreme Court of the United States, where the judgment rendered by

the Circuit judge was affirmed. The evidence in that case established substantially the same facts as are herein set forth. Those facts, which are here undisputed and supported by the testimony of the defendants, were there held by the Federal Supreme Court to constitute such gross negligence as to make the defendants liable for the loss of the bonds, the court saying: "As stated above, the reasonable care which persons should take of property intrusted to them for safe keeping without reward, will necessarily vary with its nature, value and situation, and the bearing of surrounding circumstances upon its security. The business of the bailee will necessarily have some effect upon the nature of the care required of him, as, for example, in the case of bankers and banking institutions, having special arrangements, by vaults and other guards, to protect property in their custody. Persons, therefore, depositing valuable articles with them expect that such measures will be taken as will ordinarily secure the property from burglars outside and thieves within, and that whenever ground for suspicion arises, an examination will be made by them, to see that it has not been abstracted or tampered with; and, also, that they will employ fit men, both in ability and integrity, for the discharge of their duties, and remove those employed whenever found wanting in either of these particulars. An omission of these measures would, in most cases, be deemed culpable negligence, so gross as to amount to a breach of good faith, and constitute a fraud upon the depositor. It was this view of the duty of the defendants in this case who were engaged in business as bankers, and the evidence of their neglect, upon being notified of the speculations in stocks of their assistant cashier who stole the bonds, to make the necessary examination respecting the securities deposited with them, or to remove the speculating cashier, which led the court (below) to its conclusion that they were guilty of gross negligence. * * * In this conclusion we fully concur."

Inasmuch as the undisputed facts presented to the jury for their consideration on the trial below have been determined by the Supreme Court of the United States to amount to such gross negligence as will fasten liability upon a gratuitous bailee, we are disposed to hold that the verdict of the jury was right independently of the error in the instruction, and that it ought not to be disturbed. (*Scott* v. *National Bank of Chester Valley,* 72 Penn. St. 471).

It is said, that the trial court erred in admitting testimony, showing that the bonds had been pledged as collateral security for loans made by the bank to the plaintiff at various times before they were stolen, and that the evidence should have been confined to the character of the bailment at the time of the loss in the summer or fall of 1882, as at the latter date all previous loans, for the security of which the bonds had been pledged, had been paid up, and they were then held merely as a special deposit. We think that this testimony, as well as that showing that Ker had access to the bonds for the purpose of cutting the quarterly coupons therefrom as late as October, 1882, after some of them had been abstracted, was competent to show the relation of the parties to each other and to the property. As the reasonable care, which the defendants were required to take of the bonds, depended upon the situation, and the bearing of surrounding circumstances, and the nature of the custody which they were allowed to exercise over the bonds; the extent, to which they were permitted to have access to the bonds under instructions by correspondence from the plaintiff who lived in Iowa, either for the purpose of holding them as collaterals to notes, or for the purpose of detaching the coupons, had a direct bearing . upon the question of their obligation to make examination when advised of the speculations of their assistant cashier.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*