### George B. Ross v. Vilas Daugherty.

#### Gen. No. 12,574.

1. BAILMENT—*rule of care with respect to gratuitous.* The law requires reasonable care to be exercised by a gratuitous bailee, and what is reasonable care materially depends upon the nature, value and quality of the thing bailed, the circumstances under which it is deposited,

Ross v. Daugherty.

and sometimes upon the character and confidence and particular dealings of the parties.

2. OWNERSHIP—*when technical, not essential to liability.* One who holds himself out to the public as the proprietor and owner of a hotel is liable to the public as such, notwithstanding he may not technically be such owner.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed July 2, 1906.

**Statement by the Court.** The appellee, plaintiff before a justice of the peace where this cause originated, and in the Circuit Court where it was tried *de novo*, recovered judgment against the appellant in each court, before the justice by default, for $116.50, and in the Circuit Court on the verdict of a jury after a contested trial for $100.

To reverse this latter judgment this appeal is prosecuted, and the alleged errors chiefly insisted on are, first, that by its refusal to give certain instructions tendered by the defendant, and by giving certain instructions offered by the plaintiff the court below misled the jury as to the true rule of law applicable to the facts; and secondly, that by wrongfully admitting certain letter and bill heads used in the Lexington Hotel, the defendant was prejudiced in his contention that he was not the proprietor of the said hotel, but merely a salaried employee of the owner.

Other minor contentions will be noticed in the opinion.

The facts shown by the evidence are as follows: The plaintiff Daugherty is a resident of Illinois, but is a salesman for a lumber house, and in the course of his business travels extensively. For four or five years previous to April 6, 1904, he had been in the habit of returning to Chicago each week from his trips into the country, and when in Chicago living at the Lexington Hotel. During each absence during this time he left two trunks with his personal effects therein in the charge of the hotel.

On the morning of April 6, 1904, which was Wednesday, the plaintiff was a guest at the hotel. He locked and strapped his two trunks, locked the door, went to the of-

fice of the hotel, surrendered his key, paid his bill (except a laundry bill due to the hotel) and told the clerk he was going away and would return Saturday, April 9th. It was usual for him to return to the hotel Saturday of each week. On this occasion he asked the clerk if they would take care of his baggage as usual. The clerk rang the bell for the porter and ordered him to get the trunks.

The plaintiff left the hotel and returned the following Saturday. He registered and was assigned another room. The trunks had been left, according to the subsequent statement of the hotel clerk to Mr. Daugherty, in the room occupied on Wednesday morning by Daugherty, from that day to Saturday morning, when they had been taken to a baggage room maintained by and in the hotel, where guests' baggage was usually stored. During the time they were in the room 627, where Daugherty left them, one other guest at least had been assigned to it and had occupied it and had departed. The trunks were brought from the baggage room to the new room assigned to Daugherty. They were locked and strapped as he left them, but on opening them he found missing a frock coat and a waistcoat, a Masonic pin and a Masonic charm or chapter pin, an amethyst scarf pin and a soft felt hat.

He demanded the alleged value of this personal property from the clerk of the hotel and from Mr. Ross, who he testifies was its proprietor. They said they would look into it. Mr. Daugherty was not paid anything, however, and in the following month his counsel received two letters, each on letter paper bearing at its head the card: "Private Office. Geo. B. Ross, Proprietor, Lexington Hotel, Michigan Boulevard and 22nd St., Chicago, Ill." and each signed "Geo. B. Ross, M."

In the first letter Mr. Ross said; "I beg to advise that we are absolutely not responsible in any way for jewelry and wearing apparel claimed to have been lost or stolen from Mr. Daugherty's trunk left with us for storage purposes." The letter then further disclaims liability on the ground that Daugherty was not a guest of the hotel at the

time of the alleged theft. The second letter, within a few days later, makes again the assertion, "We are not responsible for Mr. Daugherty's alleged loss," and is, as before stated, signed "Geo. B. Ross, M."

These letters were introduced in evidence in this cause by the plaintiff, and marked Exhibits 2 and 3, as was also a receipted bill, marked Exhibit 1, which was headed:

"Baggage stored for guests at their own risk.

Chicago, 2–23–04. Lexington Hotel. Geo. B. Ross, Proprietor. Weekly Statement. M. V. Daugherty, Room No. 409. Rate, $1.00 at," etc., and two pages of the register of the Lexington Hotel (marked Exhibits 4 and 5), each of which was headed: "Lexington Hotel, George B. Ross, Proprietor. Chicago."

The first showed the entry: "Friday, April 1, 1904. Vilas Daugherty, Chicago, 627."

And the second:

"Ck.   Name.          Residence.        Time.        Room.
    Henry Wehr.    Milwaukee, Wis.    Wednesday,
                                      April 6, 04. . 627"

These exhibits were all objected to by the defendant as immaterial, incompetent and irrelevant.

The only evidence of the value of the things lost was offered by the plaintiff himself, who swore that the coat and waistcoat were worth $85, the hat $2, the Masonic stone pin $15, the Masonic charm $7.50, and the amethyst scarf pin $7, aggregating $116.50. This was the amount of the judgment in the justice court; in the Circuit Court the jury assessed the damages at $100. On cross-examination the plaintiff disclaimed being a tailor or jeweler or expert on the value of jewelry. Whereupon the defendant moved that the testimony of the witness on values be excluded. This motion was denied and an exception taken.

The only evidence introduced by the defendant was his own testimony. He swore that he had been engaged in the hotel business for more than twenty years, but that he knew nothing about the loss of the articles mentioned by

the plaintiff beyond plaintiff's own statement; that he was not, however, the proprietor of the Lexington Hotel and had not been since 1900; that the Ross Hotel Company, a corporation, was proprietor of the Lexington Hotel during the month of April, 1904, and for a long time before and some months after that date; that during all of that time he was employed by the Ross Hotel Company as its president at a salary of $500 a month. The appellant also testified that several months before the alleged loss by the plaintiff he had told plaintiff that he could give him a room at the hotel, which he could keep continuously at a low rate, so that he could keep his goods in there when he was out of the city, and that plaintiff declined the offer. This conversation on rebuttal the appellee denied.

The suit was brought and judgment obtained in the justice court against George B. Ross and The Ross Hotel Company jointly. On the appeal of Ross to the Circuit Court, an appeal summons was issued against The Ross Hotel Company, and it was brought in. In his closing remarks to the jury the plaintiff's attorney said: "We are going to make a motion to dismiss this suit as to this defunct corporation—the Ross Hotel Company—and leave it to you to say whether George B. Ross is liable or is not liable in this action." The defendant's attorney excepted to this remark. The court ruled the remark improper, and the plaintiff's attorney thereupon declared that he withdrew the same. An order was thereafter entered in the cause *nunc pro tunc* as of the date immediately preceding the trial, discontinuing as to The Ross Hotel Company.

CASSODAY & BUTLER, for appellant.

BYRON W. WIGHT, for appellee; CHARLES H. PEGLER, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The principle of decision applicable to this case seems to us well expressed in Gray v. Merriam, 148 Ill. 179. Re-

ferring to Story on Bailments, the court in that case said concerning gratuitous bailments:

"Story, after stating the rule that when the bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of the bailee, subsequently adds that in every case good faith requires a bailee without reward to take reasonable care of the deposit, 'and what is reasonable care must materially depend upon the nature, value and quality of the thing, the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties.'"

We think the rule and the reasoning set forth in Gray v. Merriam (the result of views more liberal, as the court intimates in its opinion, than those once entertained of the liabilities of bailees without reward) cover the case presented in this appeal.

Quoting with approval from the opinion of. Mr. Justice Field of the U. S. Supreme Court in Preston v. Prather, 137 U. S. 604, our Supreme Court says: "'Gross negligence,' as applied to gratuitous bailees, is nothing more than a failure to bestow the care which the property in its situation demands." And "The omission of the *reasonable care* required is the negligence which creates the liability, and whether *this* existed is *a question of fact for the jury to determine.*"

This rule is as applicable to bailments of baggage at hotels as to bailments of bonds at banks.

We see nothing in the instruction which is complained of in this case, or in the refusal of others tendered, which is inconsistent with it.

It seems to us, on the contrary, that the jury were properly instructed as to the law in precise accordance with it. They were told expressly that the defendant, even if proprietor of the hotel, was only a gratuitous bailee of the goods lost, that he was liable only "for failure to exercise reasonable care," (which is equivalent to "the care which the property in its situation demanded"), and then were left to determine "whether this reasonable care existed."

What was "reasonable" care under all the circumstances of this case, was certainly a matter as easy for the jury to determine as what was "slight" or "ordinary" or "gross" negligence.

Quoting from Schouler on Bailments also with approval, our Supreme Court say in Gray v. Merriam, "'slight,' 'ordinary' and 'great' are terms some courts wish to see discarded, and they prefer judging of each case by its own complexion."

If the jury had not been instructed in accordance with the claim of appellant as to the character of the bailment in the hands of the proprietor of the Lexington Hotel, at the time of the loss, the questions argued by counsel concerning the circumstances which will terminate the peculiar common law liability of an innkeeper for the baggage of his guests, would be material.  As it is, they are not so.

In our view, the jury, under a proper instruction as to the care required from the bailee under the circumstances and "complexion" of this case, came to a decision concerning the want of "reasonable care," which was not unwarranted or injudicious.

The other points chiefly insisted on by the appellant are that incompetent evidence was admitted over his objection, to show his proprietorship of the Lexington Hotel, and that even with this admitted and considered, the clear preponderance of evidence must be held to negative his ownership, and consequently his liability.

We cannot agree with these propositions.  If the appellant was the ostensible proprietor and operator of the hotel, that is if he not only presented to the public generally, and to the guests of the hotel particularly, the aspect of such proprietorship, but also held himself out as such proprietor by advertisements upon the stationery and register of the hotel, especially arranged to attract the attention of the public and guests, then he was the bailee of these goods, and a mere want of technical ownership of the plant, or his private and personal relations to some corporation hav-

ing an investment therein, could not protect him from liability as such bailee.

The evidence of the advertisements was competent and properly admitted, and so were the letters signed by the appellant personally and treating of "our responsibility" in connection with the nature of the bailment.

Nor do we think that the testimony of Ross made a clear preponderance of the evidence to the proposition that he was not the bailee of these goods. The jury were instructed on this point certainly as favorably to the defendant as he could properly claim, and came, in our opinion, to a justifiable conclusion.

Appellant complains of the first instruction given for the plaintiff, but his criticism is based upon a misapprehension of what it contains. It does not tell the jury to "disregard the entire testimony" of such a witness as is described therein. It is not, in our opinion, objectionable.

The objections made to the language of counsel for appellee in his closing argument reproved by the court, and to the refusal of the court to exclude the plaintiff's testimony as to the value of the goods lost, we do not think of serious import.

The judgment of the Circuit Court is affirmed.

*Affirmed.*