# Chicago Hotel Company v. Julius P. Baumann et al.

## Gen. No. 12,985.

1. GROSS NEGLIGENCE—*definition of, as applied to law of bailment.*  Gross negligence, as applied to gratuitous bailees, is nothing more than a failure to bestow the care which the property in its situation demands.

2. FINDING OF COURT—*when will not be disturbed.*  An Appellate Court will not disturb a correct finding and judgment where a cause has been tried by the court without a jury merely because the court entertained an incorrect view of the law.

Action of assumpsit.  Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.  Heard in this court at the March term, 1906.  Affirmed.  Opinion filed February 7, 1907.

PECKHAM, SMITH, PACKARD & APMADOC, for appellant.

BAILEY, HALL & SPUNNER, for appellees.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The judgment herein appealed from was in favor of the members of the firm of J. P. Baumann & Sons, dealers in shirtwaists, and against the corporation in control of the Palmer House, in Chicago. Its amount was $494.50. The facts developed at the trial below were these:

The plaintiffs' agent, Milton Schutz, had been for several years in the habit of making stops at the Palmer House and displaying there the samples of the plaintiffs' goods which he carried with him in sample trunks—shirtwaists and shirtwaist suits of silk, cotton, and wool. He lived in Chicago elsewhere, but as the agent of the plaintiffs, and in the prosecution of their business, often took a room at the hotel and showed his goods. As he testified that in five or six years he had received from sixty to seventy-five receipted bills from the hotel, and as some of the stops at least were of several days, it is evident that he was a very frequent guest at the hotel, and that his arrangements and business and the manner of transacting it must have been well known to the management of the house. It was his custom to pack his trunks and give them to the house porter when he left the hotel, receiving from him a house check, and claiming the trunks on the check when he returned. This we understand to be involved in Mr. Schutz's statement in evidence, which was not questioned or contradicted by the defendant, in relation to his action on leaving the hotel in the closing days of August, 1905: "I packed my trunks up and called the porter and asked him to give me a house check for them, and he gave me a house check, the same as he had always done theretofore."

Mr. Schutz returned to the hotel September 11, 1905, engaged another room, and had his trunks brought up from the basement, where they had been stored. On opening them he discovered that they had apparently been set up on their ends, and the contents of the inner cases at the lower ends were seriously damaged by water. The goods had been discolored—the colors had run together. The water was still in the trunks. The trunks themselves, which were made of papier mache, and the inner cases were warped and damaged. A suit eventuating in the judgment appealed from herein was the result.

Schutz at the trial below testified that Mr. Vierbuchen, the manager of the hotel, told him that "it was too bad it had happened—that the same thing had happened before down there." Mr. Vierbuchen, who was the only witness called by the defendant, said that "he had never received any complaints from any guest as to injury to his property while in the hotel, excepting only Mr. Schutz"—a very sweeping statement certainly, which perhaps should, in justice to the witness, be taken as meaning damage of the kind described herein to property stored as was the property involved in this cause.

But there was evidence offered by the plaintiffs tending strongly to show a state of things as to the basement, or that part of it in which the trunks were evidently put, which made it a very unsafe place in which to store valuable property likely to be injured by water. This state of things also was one which, under the circumstances, the management of the hotel must be presumed to have had notice of. Louis Cading, who had worked at the Palmer House for eighteen years "off and on," swore that there was a baggage room in the basement with a floor a foot or eighteen inches above the level of the rest of the basement, and that he never knew water to get up into that room, but that sample trunks were sometimes stored in the basement outside the baggage room, and that

the basement, by the backing up of the sewer, was frequently flooded. He particularly named the latter part of April or the first of May, 1905, as a time when there had been such an overflow, and said that once he knew the basement to have been flooded twice in three days.

William Burras, who had been a porter at the Palmer House for seven or eight years, said that he had known the basement to be flooded very often, and that three or four times he had noticed trunks injured by it.

Testimony as to the amount of damage was given at the trial, which, though questioned by defendant, sufficiently justified the finding of the trial judge, who heard the cause without a jury, to render it unjustifiable for us to disturb the judgment on the ground of excessiveness.

The defense was placed entirely upon the conceded fact that Schutz had paid his bill and ceased to be a guest of the hotel in August, 1905, when he left his trunks and took the "house check," and that that receipted bill carried in small type at the head of the paper, "Baggage or other property stored for guests will be at their risk." It was shown that Mr. Schutz had taken many receipted bills from the Palmer House, but he denied that his attention had ever been called to that heading, or that he had ever noticed it.

The trial judge held, as a matter of law, "that the defendant was subject to the liability of an innkeeper only during the time that the plaintiffs' agent remained a guest of the hotel, and that the defendant is not liable for any damage resulting to property of the plaintiffs remaining in its custody after the plaintiffs' agent ceased to become a guest, except for damage caused by the gross negligence of the defendant or its agents or servants, which gross negligence must be affirmatively shown;" but on the evidence above set forth, held that the defendant was liable. This, in our opinion, was tantamount to holding that "the defendant or its agents or servants were guilty of gross negligence."

It is unnecessary to attempt a general definition of "gross negligence." It has been described as negligence with a vituperative epithet. But here it means such negligence as showed a failure of the duty owed by the defendant as bailee to the plaintiffs and their agent as bailors of the property in question under the circumstances hereinbefore detailed.

We see no reason to disturb the finding of the court below. The case for the plaintiffs is as strong and, in some respects, not unlike that for the claimant in Ross v. Daugherty, 127 Ill. App. 572, in which we affirmed a judgment for the plaintiff. Language used there is in place here: "The principle of decision applicable to this case seems to us well expressed in Gray v. Merriam, 148 Ill. 179. Referring to Story on Bailments, the court in that case said concerning gratuitous bailments: 'Story, after stating the rule that when the bailment is for the sole benefit of the bailor the law requires only slight diligence on the part of the bailee, subsequently adds that in every case good faith requires a bailee without reward to take reasonable care of the deposit, and what is reasonable care must materially depend upon the nature, value and quality of the thing, the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties. We think the rule and the reasoning set forth in Gray v. Merriam (the result of views more liberal, as the court intimates in its opinion, than those once entertained of the liabilities of bailees without reward) cover the case presented in this appeal.

"Quoting with approval from the opinion of Mr. Justice Field of the U. S. Supreme Court in Preston v. Prather, 137 U. S. 604, our Supreme Court says: 'Gross negligence as applied to gratuitous bailees is nothing more than a failure to bestow the care which the property in its situation demands.' And 'The omission of the reasonable care required is the negligence which creates the liability, and whether this ex-

isted is a question of fact for the jury.' This rule is as applicable to bailments or baggage at hotels as to bailments of bonds at banks.''

In this case, the court, by consent, took the place of a jury, and his determination .is equally to be respected.

The ingenious argument of counsel for the defendant has failed to convince us that the trial judge, by refusing to mark ''Held'' sundry propositions of law submitted to him by the defendant, showed that he decided the cause on the theory that the plaintiffs' agent was a guest when the loss occurred, and that the defendant was liable as an inkeeper. Had such been his holding, he would have refused the first proposition of law submitted, and hereinbefore set out, as merely an abstract thesis, having no application to the facts of this case. He evidently meant, on the contrary, by holding it to signify his opinion that Mr. Schutz was not a guest when the loss occurred, and that the innkeeper's special liability did not then exist. The refusal of the other propositions might well have been because he thought that the one marked held made sufficiently clear his view of the law.

But if it were assumed that the refusal was for other reasons, and that his view of the law was incorrect, we should still see no reason for disturbing a finding and judgment which we believe proper. In a cause tried by the court without a jury, as was this, there is especially no reason why we should interfere with a correct finding and judgment of the court below because he entertained an inaccurate view of the law. In this case, that the goods in question being left under certain peculiar circumstances, with a bailee for storage, were put into a place which was in danger of flooding, and were injured, is incontestable.

On the testimony it must be considered proven from their condition when taken upstairs, that they were not put into the baggage room, which was safe, but into another part of the basement, which was not safe;

that under the circumstances alluded to, this was "lack of reasonable care" and "a failure to bestow the care which the property in its situation demanded," was, as we think, the opinion of the trial court. It is, at all events, ours. We do not, however, consider the case one for delay damages, as argued by appellees.

The judgment is affirmed.

*Affirmed.*