CITIZENS STATE BANK OF RUGBY, a Corporation, v. F. M. IVERSON.

(153 N. W. 449.)

**Deed — action to set aside — to establish trust in land — proof — burden of — bank — vice president — control.**

1. Where an action is brought to set aside a deed and to establish a trust in the land which is conveyed thereby, the burden of proof is upon the plaintiff, and no such relief will be granted where the evidence tends to show that the land was purchased out of a bank deposit of the defendant, and by checks drawn thereon by her husband, which were credited to his account and then paid out of such account to the vendor, and where such husband had general authority from the defendant to invest her money for her use as he saw fit, and to draw checks on her account for that purpose; but where the evidence also tends to show that such husband was vice president of, and had almost entire control of, the bank, and prior to such purchase had without authority drawn checks upon said wife's account to cover up overdrafts of his own, and by such means had apparently, and according to the books of the bank, depleted such account so that if such checks were charged against it there was not sufficient money in the account to make the purchase.

**Bank — general deposit in — not bailment fund — debt by bank to depositor.**

2. A general deposit in a bank does not constitute a bailment or trust fund, but merely a debt which is due and owing by the bank to the depositor.

Opinion filed May 14, 1915. On petition for rehearing June 8, 1915.
30 N. D.—32.

Appeal from the District Court of Pierce County, *Burr,* J.

Action to determine adverse claims.    Judgment for defendant. Plaintiff appeals.

Affirmed.

*Albert E. Coger,* for appellant.

Iverson was the managing officer of the bank, in fact, the sole management thereof rested with him.    As to the funds of the bank, he was a trustee.    He occupied a fiduciary relation so far as the bank's funds were concerned.    Rev. Codes 1905, §§ 5712–5715, 5718, 9282, 9206, 4657, 9277, 4822, 5706, 5711, 5710, 5724, Comp. Laws 1913, §§ 6281–6284, 6287, 10011, 9931, 5172, 10006, 5365, 6275, 6280, 6279, 6293.

The beneficial owner is allowed to follow his equitable property in the hands of third persons.    3 Pom. Eq. Jur. § 981.

Where one occupying such a position buys land with trust funds, and takes title in his own name without any declaration of a trust, a trust at once arises in favor of the original *cestui que trust* or other beneficiary.    1 Pom. Eq. Jur. § 422; 2 Pom. Eq. Jur. § 587; 3 Pom. Eq. Jur. § 1409; p. 2024, note 1.

Mr. Iverson intended that Mrs. Iverson should get the land which he had purchased with trust funds.    Shearer v. Barnes, 118 Minn. 179, 136 N. W. 861.

Unless it appear that Mrs. Iverson is a bona fide purchaser of the Mygland land, she can have no interest therein.    2 Pom. Eq. Jur. §§ 738, 745, 746.

One who at the time of his purchase, advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase is set aside, and purchases in the honest belief that his vendor had a right to sell, and without notice of any kind of any adverse rights, claims, interest, or equity of others in and to the property sold, is a bona fide purchaser.    5 Cyc. 719; 2 Pom. Eq. Jur. § 751.

A pre-existing indebtedness which is neither discharged nor extended does not constitute the basis for a bona fide purchase.    There must be a present valuable consideration.    2 Pom. Eq. Jur. § 748; Porter v. Andrus, 10 N. D. 561, 88 N. W. 567; Adams v. Vanderbeck, 148 Ind. 92, 62 Am. St. Rep. 497, 45 N. E. 645, 47 N. E. 24; Sipley v. Wass, 49 N. J. Eq. 463, 24 Atl. 233, 23 Am. & Eng. Enc. Law, p. 491. p. 491.

While a third person shall not be punished for the fraud of another, yet he shall not avail himself of it. Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 9 Am. St. Rep. 698; 17 N. E. 496; Niblack v. Cosler, 74 Fed. 1000; First Nat. Bank v. New Milford, 36 Conn. 93; Innerarity v. Merchants' Nat. Bank, 139 Mass. 332, 52 Am. Rep. 710, 1 N. E. 282; Gunster v. Scranton Illuminating H. & P. Co. 181 Pa. 357, 59 Am. St. Rep. 650, 37 Atl. 550; Allen v. South Boston R. Co. 150 Mass. 200, 5 L.R.A. 716, 15 Am. St. Rep. 185, 22 N. E. 917; Loring v. Brodie, 134 Mass. 468; Platt v. Birmingham Axle Co. 41 Conn. 255; First Nat. Bank v. Dunbar, 118 Ill. 625, 9 N. E. 186.

It is true that where the party elects to accept the fruits of a transaction he will be held estopped to claim both the fruits and the property from which the same are derived. After accepting the benefits of a transaction a party will not be permitted to repudiate it. Morris v. Ewing, 8 N. D. 103, 76 N. W. 1047; Russell v. Waterloo Threshing Mach. Co. 17 N. D. 248, 116 N. W. 611.

A principal must assume the obligation if he wishes to accept the benefits of an unauthorized contract of his agent. St. Johns Mfg. Co. v. Munger, 106 Mich. 90, 29 L.R.A. 63, 58 Am. St. Rep. 468, 64 N. W. 3; Andrews v. Robertson, 111 Wis. 334, 54 L.R.A. 673, 87 Am. St. Rep. 870, 87 N. W. 190; Anderson v. First Nat. Bank, 4 N. D. 192, 59 N. W. 1029; Johnson Harvester Co. v. Miller, 72 Mich. 265, 16 Am. St. Rep. 536, 40 N. W. 429.

A principal is always liable for a fraud committed by an agent in the course of his employment, when the fraud is for the benefit of the principal. Fairchild v. McMahon, 139 N. Y. 290, 36 Am. St. Rep. 701, 34 N. E. 779; Jarvis v. Manhattan Beach Co. 148 N. Y. 652, 31 L.R.A. 776, 51 Am. St. Rep. 727, 43 N. E. 68; Nicols v. Bruns, 5 Dak. 28, 37 N. W. 754; Bennett v. Judson, 21 N. Y. 238; Elwell v. Chamberlin, 31 N. Y. 611; Jeffrey v. Bigelow, 13 Wend. 518, 28 Am. Dec. 476; Peebles v. Patapsco Guano Co. 77 N. C. 233, 24 Am. Rep. 447; Haskell v. Starbird, 152 Mass. 117, 23 Am. St. Rep. 809, 25 N. E. 14; Busch v. Wilcox, 82 Mich. 315, 46 N. W. 940, 82 Mich. 336, 21 Am. St. Rep. 563, 47 N. W. 328; Griswold v. Gebbie, 126 Pa. 353, 12 Am. St. Rep. 878, 17 Atl. 673; Wolfe v. Pugh, 101 Ind. 293; Rhoda v. Annis,

75 Me. 17; 46 Am. Rep. 354; Smalley v. Morris, 157 Pa. 349, 27 Atl. 734; Mechem, Agency, § 739; Comp. Laws 1913, § 3973; Eberts v. Selover, 44 Mich. 519, 38 Am. Rep. 278, 7 N. W. 225; McClure Bros. v. Briggs, 58 Vt. 82, 56 Am. Rep. 557, 2 Atl. 583; Mercier v. Copelan, 73 Ga. 636; Wyckoff v. Johnson, 2 S. D. 91, 48 N. W. 637; Joslin v. Miller, 14 Neb. 91, 15 N. W. 214; Kickland v. Menasha Wooden Ware Co. 68 Wis. 40, 60 Am. Rep. 831, 31 N. W. 471; McKeighan v. Hopkins, 19 Neb. 33, 26 N. W. 614; Honaker v. Board of Education, 42 W. Va. 170, 32 L.R.A. 413, 57 Am. St. Rep. 847, 24 S. E. 544; Zehnder v. Stark, 248 Mo. 39, 154 S. W. 92; Thomson-Houston Electric Co. v. Capitol Electric Co. 12 C. C. A. 643, 22 U. S. App. 669, 65 Fed. 344.

A person who has the benefit of his agent's contract must take it *cum onere*. Laughlin v. Excelsior Power Mfg. Co. 153 Mo. App. 508, 134 S. W. 116; Union Bank & T. Co. v. Long Pole Lumber Co. 70 W. Va. 558, 41 L.R.A.(N.S.) 663, 74 S. E. 674; D. Sullivan & Co. v. Ramsey, — Tex. Civ. App. —, 155 S. W. 580.

Where the conveyance is a voluntary one, it will be set aside even if the grantee is innocent of the fraud. Hitchcock v. Kiely, 41 Conn. 611; McKenna v. Crowley, 16 R. I. 364, 17 Atl. 354; Partelo v. Harris, 26 Conn. 483; Christian v. Greenwood, 23 Ark. 258, 79 Am. Dec. 104; Hamilton v. Staples, 34 Conn. 316; 2 Pom. Eq. Jur. 1st ed. § 909; Trumbull v. Hewitt, 65 Conn. 60, 31 Atl. 495.

*Torson & Wenzel* and *H. B. Senn* (*Engerud, Holt, & Frame,* of counsel), for respondent.

The money deposited did not remain the property of the depositors, but became the property of the bank; the account represented a debt to Mrs. Iverson and Mr. Lockwood, payable to them or their order, on demand. Shuman v. Citizens' State Bank, 27 N. D. 599, L.R.A. 1915A, 728, 147 N. W. 388.

The cashier of the bank participated in and knew all of the facts and circumstances, and knew that the transactions were illegal and fictitious. There is no possible pretext for the bank to claim the transactions were within the apparent scope of Mr. Iverson's agency for Mrs. Iverson. Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N. D. 270, 29 L.R.A.(N.S.) 567, 127 N. W. 522; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 9 Am. St. Rep. 698, 17 N. E. 496.

And Mrs. Iverson is not chargeable with notice of such acts, or with liability therefor. Mechem, Agency, 2d ed. § 1831 and cases cited in notes; Warren v. Dixon, 74 N. H. 355, 68 Atl. 193; Henry v. Allen, 151 N. Y. 1, 36 L.R.A. 658, 45 N. E. 355; Allen v. South Boston R. Co. 150 Mass. 200, 5 L.R.A. 716, 15 Am. St. Rep. 185, 22 N. E. 917.

The bank has no claim either against Mrs. Iverson or the land in question, because she had no notice, nor is she chargeable with notice, of Iverson's alleged wrongs. Rev. Codes 1905, § 5782, Comp. Laws 1913, § 6350; Weisser v. Denison, 10 N. Y. 68, 61 Am. Dec. 731; Hood v. Fahnestock, 8 Watts. 489, 34 Am. Dec. 489; Bracken v. Miller, 4 Watts & S. 102; 31 Cyc. 1587, et seq, 1595; Ætna Indemnity Co. v. Schroeder, 12 N. D. 110, 95 N. W. 436; Bigelow, Fr. § 239; First Nat. Bank v. German American Ins. Co. 23 N. D. 139, 38 L.R.A.(N.S.) 213, 134 N. W. 873; Mechem Agency, §§ 718, 723, et seq; Hummel v. Bank of Monroe, 75 Iowa 689, 37 N. W. 954; Thomson-Houston Electric Co. v. Capitol Electric Co. 12 C. C. A. 643, 22 U. S. App. 669, 65 Fed. 341; Allen v. South Boston R. Co. 150 Mass. 200, 5 L.R.A. 716, 15 Am. St. Rep. 185, 22 N. E. 917.

He who voluntarily, and with knowledge of the facts, accepts the benefit of an act purporting to have been done on his account by his agent, thereby ratifies it and makes it his own as though he had authorized it in the beginning. Mechem, Agency, 2d ed. §§ 345, 434.

The alleged embezzlement of the bank's funds was not an act, and did not purport to be an act, done by Iverson as agent for Mrs. Iverson. Mechem, Agency, (2d ed.) §§ 376–478; Shuman v. Steinel, 129 Wis. 422, 7 L.R.A.(N.S.) 1048, 116 Am. St. Rep. 961, 109 N. W. 74, 9 Ann. Cas. 1064; Meiners v. Munson, 53 Ind. 138; Mitchell v. Minnesota Ins. Co. 48 Minn. 278, 51 N. W. 608; Puget Sound Lumber Co. v. Krug, 89 Cal. 237, 26 Pac. 902; Ilfeld v. Ziegler, 40 Colo. 401, 91 Pac. 825; Richardson v. Payne, 114 Mass. 429; Linn v. Alameda Min. & Mill. Co. 17 Idaho, 45, 104 Pac. 668; Wycoff, Seaman & Benedict v. Davis, 127 Iowa, 399, 103 N. W. 349; Fish & H. Co. v. New England Homestake Co. 27 S. D. 221, 130 N. W. 841; Ferris v. Snow, 130 Mich. 254, 90 N. W. 850.

Mrs. Iverson never had any knowledge of the alleged fact that the bank's funds had been used to pay for the land. Mechem, Agency, §§ 393–409; Wheeler v. Northwestern Sleigh Co. 39 Fed. 347.

A ratification of an unauthorized contract, to be effectual and binding upon the one sought to be bound as principal, must be shown to have been made by him with full knowledge of all material facts connected with the transaction. Ætna Ins. Co. v. Northwestern Iron Co. 21 Wis. 458; Baldwin v. Burrows, 47 N. Y. 199; Smith v. Tracy, 36 N. Y. 79; Case v. Hammond Packing Co. 105 Mo. App. 168, 79 S. W. 733; Thacher v. Pray, 113 Mass. 291, 18 Am. Rep. 480; Roberts v. Rumley, 58 Iowa, 301, 12 N. W. 323; Eggleston v. Mason, 84 Iowa, 630, 51 N. W. 1; Bohart v. Oberne, 36 Kan. 284, 13 Pac. 388; Manning v. Gasharie, 27 Ind. 399; John Gund Brewing Co. v. Tourtelotte, 108 Minn. 71, 29 L.R.A.(N.S.) 210, 121 N. W. 417; Eckart v. Roehm, 43 Minn. 271, 45 N. W. 443; Mechem, Agency, § 437; Gulick v. Grover, 33 N. J. L. 463, 97 Am. Dec. 728; Railroad Nat. Bank v. Lowell, 109 Mass. 214; Foote v. Cotting, 195 Mass. 55, 15 L.R.A.(N.S.) 693, 80 N. E. 600; Craft v. South Boston R. Co. 150 Mass. 207, 5 L.R.A. 641, 22 N. E. 920; Henry v. Wilkes, 37 N. Y. 562; Arey v. Hall, 81 Me. 17, 10 Am. St. Rep. 232, 115 Ill. 138, 16 Atl. 302; Proctor v. Tows, 115 Ill. 138, 3 N. E. 569; First Nat. Bank v. Oberne, 121 Ill. 25, 7 N. E. 85; Fay v. Slaughter, 194 Ill. 157, 56 L.R.A. 564, 88 Am. St. Rep. 148, 62 N. E. 592; Spooner v. Thompson, 48 Vt. 259; Condit v. Baldwin, 21 N. Y. 219, 78 Am. Dec. 137; Pennsylvania D. & M. Steam Nav. Co. v. Dandridge, 8 Gill & J. 248, 29 Am. Dec. 543.

Mrs. Iverson is not liable either by ratification, because she did not know of the facts, or by constructive notice of her agent's acts, because obtaining money from third persons was within the scope of the authority she had intrusted to him. Bennett v. Judson, 21 N. Y. 238; Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N. D. 270, 29 L.R.A. (N.S.) 567, 127 N. W. 522; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 9 Am. St. Rep. 698, 17 N. E. 496; Condit v. Baldwin, 21 N. Y. 219, 78 Am. Dec. 137; Smith v. Tracy, 36 N. Y. 79; Craft v. South Boston R. Co. 150 Mass. 207, 5 L.R.A. 641, 22 N. E. 920; Wheeler v. Northwestern Sleigh Co. 39 Fed. 347.

No trust in relation to real property is valid, unless created or declared by a written instrument subscribed by the trustee, or by his agent thereto authorized in writing, or by a writing under which the trustee claims the estate, or by operation of law. Rev. Codes 1905; §§ 4816, 4821,

4822, 5706, 5710, 5711, 5407, Comp. Laws 1913, §§ 5359, 5364, 5365, 6275, 6279, 6280, 5963; Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047.

Mere part payment of the purchase price and use and occupation do not constitute part performance when the occupation is afterwards abandoned. Miller v. Ball, 64 N. Y. 286; Wright v. Raftree, 181 Ill. 464, 54 N. E. 998; Burns v. Daggett, 141 Mass. 368, 6 N. E. 727; Wisconsin & M. R. Co. v. McKenna, 139 Mich. 43, 102 N. W. 281; Howes v. Barmon, 11 Idaho, 64, 69 L.R.A. 568, 114 Am. St. Rep. 255, 81 Pac. 48; Short v. Northern Pacific Elevator Co. 1 N. D. 159, 45 N. W. 706; Rounseville v. Paulson, 19 N. D. 466, 126 N. W. 221; Tiffany & B. Trusts, p. 28; 2 Story, Eq. Jur. 12th ed. §§ 1201, 1202.

As a resulting or implied trust is in such cases a mere matter of presumption, it may be rebutted by the other circumstances established in evidence, and even by parol proofs, which satisfactorily contradict it. 1 Lewin, Trusts, 8th Am. ed.; 3 Pom. Eq. Jur. §§ 1040 et seq.

To create a resulting trust the trust must come into existence at the very moment the title vests in the grantee. White v. Carpenter, 2 Paige, 238; Rogers v. Murray, 3 Edw. Ch. 398; Forsyth v. Clark, 3 Wend. 637; Steere v. Steere, 5 Johns Ch. 19, 9 Am. Dec. 256; Niver v. Crane, 98 N. Y. 47; Fickett v. Durham, 109 Mass. 419; Davis v. Wetherell, 11 Allen, 20, note; Cutler v. Tuttle, 19 N. J. Eq. 562; Tunnard v. Littell, 23 N. J. Eq. 267; Whitley v. Ogle, 47 N. J. Eq. 67, 20 Atl. 284; Merrill v. Hussey, 101 Me. 439, 64 Atl. 819; Pinnock v. Clough, 16 Vt. 506, 42 Am. Dec. 521; Westerfield v. Kimmer, 82 Ind. 369; Kelly v. Johnson, 28 Mo. 251; Nixon's Appeal, 63 Pa. 282; Fleming v. McHale, 47 Ill. 287; Clark v. Timmons, — Tenn. —, 39 S. W. 535; Bowen v. Hughes, 5 Wash. 442, 32 Pac. 98; Olcott v. Bynum, 17 Wall. 44, 21 L. ed. 570; Hickson v. Culbert, 19 S. D. 207, 102 N. W. 774.

Trusts cannot be created by doubtful or uncertain inferences. The evidence must be clear and convincing. 3 Pom. Eq. Jur. § 1040.

The Barnes Case, from Minnesota, cited by counsel, has no bearing on this case. The positions of the parties are wholly unlike. Mrs. Iverson has not wronged plaintiff bank or used its money, and she is not responsible for Iverson's alleged wrongs. Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 83 N. W. 245; 1 Pom. Eq. Jur. § 155; 3 Pom. Eq. Jur. §§ 1043, 1044, p. 2009; Miller v. Shelburn, 15 N. D.

182, 107 N. W. 51; Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976; Rolfe v. Gregory, 4 DeG. J. & S. 579, 5 New Reports, 257, 34 L. J. Ch. N. S. 274, 11 Jur. N. S. 98, 12 L. T. N. S. 162, 13 Week. Rep. 355.

In constructive trusts the statute of limitations begins to run at the very moment the trust comes into being. Knox v. Gye, L. R. 5 H. L. 675, 42 L. J. Ch. N. S. 234; Wilson v. Louisville Trust Co. 102 Ky. 522, 44 S. W. 121; Brynjolfson v. Dagner, 15 N. D. 337, 125 Am. St. Rep. 595, 109 N. W. 320; Nash v. Northwest Land Co. 15 N. D. 574, 108 N. W. 792; Liland v. Tweto, 19 N. D. 551, 125 N. W. 1032.

A constructive trust is not an estate in land. Plaintiff must allege and prove an estate in the land to maintain this action. Larson v. Christianson, 14 N. D. 476, 106 N. W. 51.

Iverson was not a witness. He could not be without his wife's consent. Hence there was no refusal to permit him to testify. Rev. Codes 1905, § 7253, Comp. Laws 1913, § 7871.

No adverse inference is permissible from such condition. National German-American Bank v. Lawrence, 77 Minn. 282, 79 N. W. 1016, 80 N. W. 363; French v. Deane, 19 Colo. 504, 24 L.R.A. 387, 36 Pac. 609.

BRUCE, J. This action is in the form of the statutory action to determine adverse claims, the plaintiff alleging that it has an equitable "estate and interest in the land in question." It is really an action to follow trust money which it is claimed was embezzled, into real estate, and to quiet the possession of that real estate in the plaintiff, and to recover for the use of that land during the time it was detained. It involves 560 acres of land in Pierce county, North Dakota. The trial court found for the defendant and a judgment was entered quieting the title in her. From that judgment this appeal is taken and a trial *de novo* is asked.

In 1908, the land was owned by one Andrew Mygland, and on the 17th day of October, 1908, Andrew Mygland conveyed the same by warranty deed to the defendant, Mrs. F. M. Iverson, in consideration of the sum of $11,000, less certain mortgages which the purchaser assumed. At the time of this conveyance, one A. M. Iverson, the husband of the defendant, F. M. Iverson, was the vice president and managing officer of

the Citizens State Bank of Rugby. He was practically in complete control. He and his wife, the defendant, F. M. Iverson, and her father, J. H. Lockwood, and three other persons, were stockholders. The board of directors seems to have taken but little interest in the concern, and A. M. Iverson, the vice president, controlled the bank largely to suit himself. The capital stock of the bank was $10,000. The defendant, F. M. Iverson, carried a personal account in the bank. Her husband, A. M. Iverson, also had an account. There was also another account in the bank in which the defendant, Mrs. F. M. Iverson, had an interest. This account was known as the "elevator sales account." In it Mrs. Iverson had a joint one-half interest with her father, J. H. Lockwood, the funds in the account being the amount realized from the sale of elevator property in Rugby.

The contention of the plaintiff is that A. M. Iverson, the vice president of the Citizens State Bank, embezzled the money of the bank, delivered it to Andrew Mygland, and received therefor a deed to the 560 acres running to his wife, F. M. Iverson. There is no pretense or claim, however, that Mrs. Iverson had any knowledge of the embezzlement.

The theory of the defense is that Mr. A. M. Iverson was his wife's general agent, and was vested with general authority to make such investments as he deemed advisable out of the elevator sales account, and to draw upon the account and to disburse it for this purpose, and that he had invested her money, which he drew from the elevator account for that purpose, in the land in question. A counter theory of the plaintiff, however, is that before such attempted withdrawal, if any there was, the fund had been exhausted.

The elevator account covered a period of nearly four years, beginning with August 20th, 1907, and ending with September 30, 1911, at which later time it was balanced and completely exhausted. According to the books of the bank, the balance on hand on October 8th, 1908, the time of the alleged purchase, was $6,361.83. The alleged purchase was made on October 8th, 1908. Five hundred dollars of the purchase price of the land in question was paid on October 8th, and the balance of $5,989.95 on October 17th, 1908. On October 17th, the balance was $6,417.33, and on October 19th, a deposit in the interim of $55.75 having been made, the balance was $6,473.08. After the date of the alleged purchase, four checks appear to have been drawn: one to W. D. McClintock

on December 22, 1908, for $4,290; one on June 23, 1909, to A. M. Iverson, for $2,000; one on December 5, 1910, to the Citizens State Bank, for $600; and one on September 30, 1911, to J. H. Lockwood, for $44.15. The books do not show any withdrawal from the elevator sales account from the 22d day of September, 1908, to the 23d day of June, 1909, except the withdrawal on December 22, 1908, of $4,290, in the form of a check to W. D. McClintock. Mrs. Iverson testifies that "Mr. Iverson had charge of my business, and he also had charge of the elevator sales account, and if he wished to take money from the elevator sales account and put in his account, and then take money out of his account, it was satisfactory to me." Every dollar of the purchase price of the land was paid on October 17, 1908, except the $500 which was paid on October 8th. The payments were made by A. M. Iverson's personal check for $500, A. M. Iverson's personal check for $2,819.95, and by $2,970 in cash, which was taken from the cash drawer of the bank by the said Iverson, and for which a cash slip or memorandum seems to have been left. An examination of Mr. A. M. Iverson's account shows that on September 22d a check of $2,500 on the elevator sales account was deposited to his credit, and though it shows that on October 9th a check of $500 was paid on the Mygland tract, his account was, after the payment of that check, overdrawn to the extent of $981.09, and after he had paid, on October 17th, the other check on the land for $2,819.95, and taken credit on his own account for a $2,500 note which he took on the trade, his overdraft was $1,314.64.

However, a little closer examination of the evidence also tends to show that on October 8th there was actually in the bank to the credit of the elevator sales account, one half of which belonged to the wife, the sum of $13,474.98, and on October 17th when the trade was consummated, the sum of $13,530.48. It shows that on July 12, 1908, there was a credit of $12,862.38, one half of which, namely, $6,431.19, belonged to Mrs. Iverson; that on July 13, 1908, the husband, A. M. Iverson, apparently embezzled $4,500 from the cash drawer, and to cover up the shortage Mr. Cassidy, the cashier, presumably at the direction of Mr. Iverson, made out a check for $4,500 on the elevator sales account, making it appear on the books of the bank that such money had been paid to the husband; that on September 18th, there was another deposit of $113.15, and on September 22d another memorandum check fraud-

ulently made out for $2,500 and credited to the account of Mr. Iverson. The result of these entries was to make it appear that the owners of the elevator sales account had withdrawn and paid to Mr. Iverson checks to the amount of $7,000; one for $4,500 on July 17th, one for $2,500 on September 22d; and that on September 22d there was left only $5,975.33 due from the bank to the owners of the elevator sales accounts, when such was not the case, the withdrawal having been made by an officer of the bank fraudulently and for his own use.

It is argued by the defendant from all of this, and we believe correctly, that these were merely false entries on the books made to conceal Mr. Iverson's misappropriations of the bank's funds which were in his custody and control as the managing officer of that bank; that there was no misappropriation of Mrs. Iverson's money; that the money that was misappropriated was the bank's money; that all that Mrs. Iverson had was an open account in the bank which represented an amount due to her from the bank, which was payable on demand, and that if at the time of the payment on the trade with Mygland she had in the bank a credit sufficient to cover the amount of the purchase, and if she really authorized her husband, as her agent, to make the trade and spend her money, and to draw on her account therefor, it could not be said that in payment of the purchase price of the land in question the bank's funds were embezzled; as the prior embezzlements, or rather the manipulations of the books, had been made to cover up embezzlements of the bank's funds, and not of the elevator sales accounts, and being unauthorized by Mrs. Iverson, and being made by an officer of the bank and conjointly with his *alter ego,* who was her agent, and in fraud of her, and the obligation of the bank to her being that of a debtor, and not of a custodian or bailee, she was not bound thereby.

Not only is Mrs. Iverson's testimony clear and undisputed that she had no knowledge of these fraudulent transactions, but this fact is conceded by the appellant. Her testimony also is positive that she had given her husband permission to invest her money as he saw fit, and that she authorized the purchase of the Mygland land for $7,000. The same is true of her father, J. H. Lockwood, who appears to have had only a half interest in the elevator sales account. He testifies that he told Iverson that "if there were any good deals in land he might use the money for that purpose." He testified that he was entirely ignorant of

the fraudulent entries made by Iverson; that "he heard, when talking about the purchase of the Mygland tract, that his daughter was to have had the land;" that, though president of the bank, he took absolutely no part in its management.

Under the facts of the case, and under the concession that both Mrs. Iverson and her father were absolutely ignorant of the fraudulent manipulation, and in view of the further fact that the cashier of the bank, Mr. Cassidy, took a greater or lesser hand in the fraudulent manipulations and must have known that some of them at least were irregular, we can see no reason in law or in equity why the defendant wife is not in the position of any other depositor in the bank, and why the fraud of her husband should be imputed to her. We held in the case of Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N. D. 270, 29 L.R.A. (N.S.) 567, 127 N. W. 522, that "in case the treasurer of an elevator company, also acting as cashier of a bank in which the elevator company has money on deposit, and authorized to draw checks in the name of the elevator company upon its bank account for the purpose of paying debts and obligations of the elevator company, misappropriates funds of the bank, and for the purpose of covering up a shortage in the bank's funds until such time as he expects to be able to replace the same, draws checks of the elevator company payable to the bank and charges these checks against the elevator company on the books of the bank, without intention to transfer funds from one corporation to the other, but only for the purpose of temporarily concealing his defalcation, such checks create no liability in favor of the bank against the elevator company." We further held that "in case the cashier of the bank, having misappropriated funds of the bank or become in some manner indebted thereto as treasurer of the elevator company, draws checks upon it payable to the bank and uses the sum to pay his personal indebtedness to the bank, such checks, by their form, of themselves, operate as notice to the bank of the misappropriation of the funds of the elevator company, and the bank after accepting them with such notice cannot predicate upon them a claim of liability against the elevator company." We further held that "a banking institution is not authorized to pay out funds intrusted to it on deposit to a person known by it to stand in a trust relation to the depositor, when it has notice that such person intends to misappropriate and divert the fund received to his own uses when paid over,

and in case such payment is made the amount so paid may be recovered at the suit of the depositor." We further held in regard to notice that "in case the cashier of a banking institution who has the entire management, control, and conduct of its affiairs and stands as sole representative of the bank in all transactions relating to the receipt and disbursement of the funds of depositors, who, while so acting, draws checks of an elevator company of which he is treasurer payable to the bank, presents such checks as treasurer to himself as cashier, takes the sum of money paid over thereon, and misappropriates it, the bank for which he is acting will be held to knowledge of his fraudulent purpose at the time of presenting the checks, and cannot base thereon a claim of liability in its favor against the elevator company." This case seems to be conclusive of the one at bar. See also Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 9 Am. St. Rep. 698, 17 N. E. 496.

There was therefore no embezzlement of Mrs. Iverson's money, but of that of the bank itself, and such being the case, and A. M. Iverson, as her agent, being authorized to make the purchase and to charge her account with the amount thereof, and there being at the time sufficient money in the elevator sales account to meet such charge, there is no reason why a defendant should now be dispossessed or be made to yield up the land.

The theory of counsel for appellant is based largely upon the fact that A. M. Iverson, the vice president of the bank, was his wife's agent; that Mrs. Iverson had no actual knowledge of the state of her account, and that there is no proof that the $4,500 and $2,500 withdrawals were not used for her, and that by refusing to allow her husband to testify she precluded the plaintiff from showing what had actually been done with her money. Whether the husband could have been required to testify or not we do not decide, and refer merely to § 740(758), vol. 4, Jones on Evidence. If he could not, the objection of the wife would not raise any presumption against her. See § 739 (757), vol. 4, Jones on Evidence. No assignment of error, however, is based upon the court's ruling in this respect, and the matter is not mentioned in the brief. The case therefore stands in this position: Plaintiff brings an action to set aside a deed which is otherwise regular, and to declare a trust. The record shows conclusively that at least a part of defendant's deposit went into that land. It shows that her deposit covered the

entire purchase price, unless two prior withdrawals from her account were withdrawn by her authority. These are shown to have been credited to her husband's account, and if they were not paid upon the land, no other disposition is shown. Can it be said that there is proof in the record sufficient to set the deed aside or on which to base the trust? It is true that much has been said of the defendant's statement on cross-examination that "Mr. Iverson had charge of my business and he had charge also of the elevator sales account, and if he wished to take money from the elevator sales account and put it in his account and then take money out of his account, it was satisfactory to me." This statement, however, was made in connection with purchases or expenditures made by Mr. Iverson for the benefit of his wife, and not for his own personal use.

The question was asked and answered in connection with taxes which were paid by Mr. Iverson's personal check, and the whole testimony is as follows:

Q. I will show you "exhibit J," the tax receipt, and ask you in what manner it was paid.

A. In what manner the taxes were paid, you mean?

Q. Yes, that is, did you pay them personally?

A. Mr. Iverson tended to all my business.

Q. And have you any check or voucher for the payment of those taxes?

A. I think not I think.

Q. That is, I want to ascertain whether the payment was made and charged to your account, or whether it was made and charged to the account of A. M. Iverson.

A. I do not know whether it was charged to his account or to mine. Mr. Iverson had charge of my business and he had charge also of the elevator sales account, and if he wished to take money from the elevator sales account and put it in his account and then take money out of his account, it was satisfactory to me.

This statement in nowise shows any authority to A. M. Iverson to credit money to his account and to pay it out for any other purpose but on investments made and expenses incurred for his wife in such investments alone. 2 C. J. 644.

The mistake of counsel for appellant consists in an erroneous application to the case at bar of a well established principle of agency. He cites and relies upon Mechem on Agency, 2d ed., where the author in § 1839, vol. 2, says: "Where such an agent attempts dealings between his two principals (both not having consented thereto) either may, in accordance with well settled rules, repudiate the dealings. If, however, either one, instead of repudiating, elects to affirm the transaction and seeks to acquire or retain a benefit from it after knowledge of the facts, he must take the benefit subject to the means by which it was acquired. This is frequently exemplified in the cases already cited in which such an agent for his own purposes abstracts from one principal and attempts to convey to the other,—neither one being represented by any other agent; if the latter principal claims the benefit of the act, he must take it subject to his agent's knowledge. If A, being the agent of X and also of Y, and being indebted to Y, abstracts bonds from X and receives them for Y as security for that debt, then, though when he attempts to transfer them he may be acting as agent for X, yet when he attempts to receive them and acquire title to them he is acting as agent for Y, Y did not act in person; no one else than A acted for him; if Y had obtained any title he obtained it through A, and he must be charged with the knowledge his agent had at the time." The trouble with the case at bar is that the transactions are not the same and are in nowise necessarily related.

The husband had a general authority to draw checks on the elevator sales account for the purpose of investment. This the bank must be presumed to have known as he was its managing officer. He had no authority to commit a fraud upon the bank, or upon his wife and Lockwood, the owners of the elevator sales account, and to make charges against said account in order to cover up his embezzlements or overdrafts. The payments made by him on the land, therefore, from the elevator sales account, were payments which were made under authority and from a fund which could not be said to have been depleted by reason of checks which were wrongfully drawn on such account, and without authority from his wife, either express or implied, but in violation of his trust as an officer of the bank. The section from Mechem on Agency in no way applies, for the wife has in no manner ratified the unlawful acts. What she has ratified has merely been the

use of her money in the purchase of the land, and the ratification of the use of her money in the purchase of the land and the charging to her account of the checks drawn therefor in noway ratifies separate and distinct transactions which would involve the charging against such account of other amounts which were not chargeable against the same, and which was done by her husband, not as her agent, but in fraud of her and in fraud of the bank. The relationship between a bank and a depositor is that of debtor and creditor merely. The bank was not the custodian of the funds of, but owed the defendant wife the sum of her deposit. Against this amount she expressly or impliedly authorized, or at any rate ratified, the expenditure of the money necessary to purchase the land. The money was paid and she ratified, and had the right to ratify, the transaction. In doing this she authorized the setting off against her credit of the amount which was paid on the purchase price of the land. She authorized and ratified nothing more.

The fraudulent entries transferring certain funds from the elevator sales account to the account of A. M. Iverson did not constitute an embezzlement of Mrs. Iverson's money, but of that of the bank itself. The bank owed the defendant on that account the same amount of money after, as before, the fraudulent entries were made. Such being the case, and A. M. Iverson, as the defendant's agent, being authorized to make the purchase and to charge her account with the amount thereof, and there being at the time in the bank, and actually belonging to the elevator sales account, sufficient money to meet that charge, there is no equitable ground upon which defendant may now be dispossessed or made to yield up the land, on the theory that she has paid no consideration therefor. The bank's funds used in the purchase of the land have simply served to liquidate so much of an indebtedness owing by the bank to the defendant.

The judgment of the District Court is affirmed.

CHRISTIANSON, J., being disqualified, did not participate. HON. CHARLES M. COOLEY, Judge of the First Judicial District, sat in his stead.

GOSS, J. (concurring). Cashier Iverson embezzled $7,000 from the plaintiff bank. He then appropriated sufficient of a $14,000 elevator

sales account to replace the funds embezzled. This he did by checking against that account in favor of the bank and charging the same upon its books. Half of the elevator sales account belonged to his wife. He was her general agent to invest her funds so deposited. Her funds were thus diverted in breach of his trust, and to make good a shortage with the bank, of which fact it was charged with notice. To make good his trust to the wife, who was ignorant of his diversion of her funds, he then overdrew his own account with the bank to buy with other funds this farm. He then in part recouped the bank by having it discount a promissory note he procured in the land deal. The bank received the amount and benefit of this note. The bank now seeks to subject the land to a resulting trust in its favor, claiming that its wrongfully diverted funds purchased the farm, and that she as owner is by operation of law a trustee of title for it.

Before it can recover it must establish that its money, and not that of its depositor, the grantee, was used. The test as to that is whether the depositor immediately upon the diversion of her deposit could have recovered it of the bank receiving it. The bank, charged with notice of the shortage by embezzlement of it by its cashier, cannot retain the money unless it was the husband's or unless he was authorized by her to use it as his to replace the funds embezzled. The bank is charged with knowledge of its receipt, and that it received it by virtue of a check on the account of one of its depositors. The whole transaction was within its presumed knowledge. The money did not belong to Iverson. Of that fact it had imputed knowledge. Being charged with knowledge of the source from whence it came, it must establish that the diverter of the deposit had authority so to do and to make the application of it as was made. The burden of proof is upon it to establish this. Otherwise it would be obligated to respond in money to the depositor's demand for her funds. As a defense it is shown that at the most but a general authority was in the husband to invest the wife's funds on deposit. From this no authority to dissipate the deposit in repaying his criminal obligation to the bank can or should be inferred, as such would be as much without the scope of his authority to invest as it would be different from an investment. The foregoing is my conclusion from the evidence and an investigation of authorities. Concur in affirming the judgment.

30 N. D.—33.

## On Petition for Rehearing.

Bruce, J. A petition has been filed in which it is claimed that A. M. Iverson had not overdrawn his account at the time of the drawing of the $4,500 and the $2,500 checks on the elevator sales account, nor were the checks drawn in favor of the bank, and it is therefore claimed that the money was not used for the benefit of the bank and that the case is therefore distinguishable from that of Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N. D. 270, 29 L.R.A.(N.S.) 567, 127 N. W. 522. We do not, however, so understand the evidence. From our examination of the abstract and of the exhibits, we are satisfied that on July 13th, the time of the drawing of the $4,500 check, there was not only an overdraft of $2,916.19, but that A. M. Iverson was indebted to the bank for $4,500 which he had taken from the cash and had evidently been juggling with for nearly a month. In our opinion it was immaterial whether the charges were wrongfully made against the wife's account in order to cover up an overdraft, or to cover up an embezzlement of money from the cash drawer, although they appear to have been made for both purposes.

Again plaintiff is in error in regard to the question of the overdraft at the time of the drawing of the $2,500 check. He only gives us in his printed brief the account of A. M. Iverson as it appears from September 22d and thereafter. The entries on September 22d show checks of $110.95 and a deposit of $2,500 (evidently the check on the elevator sales account) and a balance of $622.90. In order that there might be that balance, however, the $2,500 check had to be deposited for the books show that prior to the 22d, and prior to the deposit of the $2,500 check, there was an overdraft of $1,766.15.

The petition for a rehearing is denied.