MINNESOTA MUTUAL LIFE INSURANCE COMPANY, a Foreign Corporation, v. TAGUS STATE BANK, a Corporation.

(L.R.A.1917A, 519, 158 N. W. 1063.)

**Banks — notes — collections — cashier's checks — deposited proceeds in bank — plaintiff — owner of notes — owner of checks.**

1. Defendant bank collected two notes for plaintiff and placed the proceeds on deposit with itself, issuing therefor its cashier's checks for $1,802.00 to plaintiff, but held them in its bank undelivered. Its cashier, John J. Brugman, ap-

propriated to the use of himself and the president of the bank a like amount of money from said bank. The president of said bank, W. J. Brugman, knew all these facts, and participated in appropriating part of the money, part of it going to take up his own overdraft with his bank. It is stipulated that previous to this transaction the stockholders and directors of defendant bank believed the cashier "to be an honest and upright officer." The bank refuses to pay plaintiff the money it so appropriated, and denies liability under the claim that it received said moneys as a special deposit, and was obliged to use only ordinary care in the keeping and transmission thereof, and that while so doing, and without its negligence, its officers, whom it believed to be honest, misappropriated the special deposit to their use, and for which it should not be held responsible.

*Held:* The act of these officials was the act of the bank.

**Special deposit.**

2. The funds were not on special deposit.

**Officers of bank — funds — misappropriation of — to own use — act of bank — general deposit.**

3. The funds were on general deposit with it, and therefrom arose the relation of debtor and creditor between plaintiff and defendant.

**Special deposit — loss of — negligence — of bank — liability — judgment.**

4. Though it be assumed that this was a special deposit, yet the loss thereof presumes negligence by defendant, and places it under the burden of affirmatively proving that it was not negligent if it would escape liability; and not making such proof, it must respond in judgment.

Opinion filed August 2, 1916.

From a judgment against defendant in District Court, Ward County, *Leighton,* Judge, defendant appeals.

Affirmed with costs.

*Palda & Aaker* and *I. M. Oseth,* for appellant.

"Money received by a bank solely for the purpose of transmission to a correspondent bank becomes a special deposit." Cutler v. American Exch. Nat. Bank, 113 N. Y. 593, 4 L.R.A. 328, 21 N. E. 710.

"The fact that money so collected has been mingled in the vault with other funds of the bank does not alter or destroy the relation of bailor and bailee." Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 Am. St. Rep. 769, 86 N. W. 21; 3 R. C. L. 633; Re Johnson, 103 Mich. 109, 61 N. W. 352; Wallace v. Stone, 107 Mich. 190, 65 N. W. 113; Griffin v. Chase, 36 Neb. 328, 54 N. W. 572; Continental Nat. Bank

v. Weems, 69 Tex. 489, 5 Am. St. Rep. 85, 6 S. W. 802; Commercial Nat. Bank v. Armstrong, 39 Fed. 684; McLeod v. Evans, 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214.

Money so held is not in any sense the property of the bank. Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 Am. St. Rep. 769, 86 N. W. 21; Minneapolis Sash & Door Co. v. Metropolitan Bank, 77 Am. St. Rep. 609, note; Bailie v. Augusta Sav. Bank, 95 Ga. 277, 51 Am. St. Rep. 74, 21 S. E. 717; Prescott v. Leonard, 32 Kan. 142, 4 Pac. 172; Re State Bank, 56 Minn. 119, 45 Am. St. Rep. 454, 57 N. W. 336; Griffin v. Chase, 36 Neb. 328, 54 N. W. 572; National Bank v. Johnson, 6 N. D. 180, 69 N. W. 49; Akin v. Jones, 93 Tenn. 353, 25 L.R.A. 523, 42 Am. St. Rep. 921, 27 S. W. 669; Beal v. Somerville, 17 L.R.A. 291, 1 C. C. A. 598, 5 U. S. App. 14, 50 Fed. 647; Commercial Nat. Bank v. Armstrong, 39 Fed. 684; Re Johnson, 103 Mich. 109, 61 N. W. 352; McLeod v. Evans, 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214; 3 R. C. L. 522.

For the loss of the subject of bailment, the bailee is liable only for negligence in its care, or for acts constituting conversion. The degree of negligence depends upon the character of the bailment. Coggs v. Bernard, 2 Ld. Raym. 909, 92 Eng. Reprint, 107; Cheshire v. Bailey, 1 Ann. Cas. 94, and note, [1905] 1 K. B. 237, 4 B. R. C. 553, 74 L. J. K. B. N. S. 176, 53 Week. Rep. 322, 92 L. T. N. S. 142, 21 Times L. R. 130; 2 C. J. 723, 732, § 396; Louisville & N. R. Co. v. Buffington, 131 Ala. 620, 31 So. 592; Richardson v. Futrell, 42 Miss. 525; Robinson v. Illinois C. R. Co. 30 Iowa, 401; Rechtscherd v. St. Louis Accommodation Bank, 47 Mo. 181.

A crime or tort committed against the bank itself has never been held to be the act of the bank. A bank is not responsible for the acts of its officers, unless those acts are within the real or ostensible authority of the officers. Candiff v. Louisville, N. O. & T. R. Co. 42 La. Ann. 477, 7 So. 601; McKeon v. Citizens' R. Co. 42 Mo. 79, 4 Am. Neg. Cas. 471; Jackson v. St. Louis, I. M. & S. R. Co. 87 Mo. 422, 56 Am. Rep. 460, and other cases cited in note to Chase v. Waterbury Sav. Bank, 1 Ann. Cas. 96.

If the acts of these officers were not within their authority and powers, then they were not the acts of the bank, and the bank cannot

here be held. National Bank v. Johnson, 6 N. D. 185, 69 N. W. 49.

In an action of this nature, where plaintiff has made out a prima facie case, the burden then shifts to defendant to account for the non-delivery of the property, and one of these methods is to show that the property was lost or stolen from him without his fault or culpable neglect, he having exercised all care and diligence commensurate with the circumstances, the nature of the property, and character of the trust. This being shown, the prima facie liability has been avoided, and it then becomes the duty of plaintiff to rebut such showing by affirmative proof of lack of care and diligence. Until plaintiff does this he cannot recover. Claflin v. Meyer, 75 N. Y. 260, 31 Am. Rep. 467; Lamb v. Western R. Corp. 7 Allen, 98; Kafka v. Levensohn, 18 Misc. 202, 41 N. Y. Supp. 368; Rothoser v. Cosel, 39 Misc. 337, 79 N. Y. Supp. 855.

Where the bank did not know of the dishonest practices of its cashier, and could not by the exercise of ordinary care have discovered same, it cannot be held liable for his unauthorized and dishonest acts and conduct. Preston v. Prather, 137 U. S. 604, 34 L. ed. 788, 11 Sup. Ct. Rep. 162, 1 Am. Neg. Cas. 599; Cutting v. Marlor, 78 N. Y. 454; Ouderkirk v. Central Nat. Bank, 119 N. Y. 271, 23 N. E. 875; Gray v. Merriam, 148 Ill. 190, 32 L.R.A. 769, 39 Am. St. Rep. 172, 35 N. E. 810, 1 Am. Neg. Cas. 478; Foster v. Essex Bank, 17 Mass. 479, 9 Am. Dec. 168, 1 Am. Neg. Cas. 502.

The negligence of the bank in such cases must be gross, culpable. Smith v. First Nat. Bank, 99 Mass. 605, 97 Am. Dec. 59, 1 Am. Neg. Cas. 523; Merchants' Nat. Bank v. Guilmartin, 88 Ga. 797, 17 L.R.A. 322, 15 S. E. 831; First Nat. Bank v. Graham, 79 Pa. 106, 21 Am. Rep. 49; Ray v. Bank of Kentucky, 10 Bush, 344.

"The undertaking of banking corporations with respect to their officers is that they shall be skilful and faithful in their employment; they do not warrant their general honesty and uprightness." Foster v. Essex Bank, 17 Mass. 479, 9 Am. Dec. 168, 1 Am. Neg. Cas. 502; Pattison v. Syracuse Nat. Bank, 80 N. Y. 82, 36 Am. Rep. 582; Preston v. Prather, 137 U. S. 604, 34 L. ed. 788, 11 Sup. Ct. Rep. 162, 1 Am. Neg. Cas. 599; Giblin v. McMullen, L. R. 2 P. C. 317, 5 Moore, P. C. C. N. S. 434, 38 L. J. P. C. N. S. 25, 21 L. T. N. S.

.214, 17 Week. Rep. 445, 3 Eng. Rul. Cas. 613; Smith v. First Nat. Bank, 99 Mass. 605, 97 Am. Dec. 59, 1 Am. Neg. Cas. 523.

*Bradford & Nash* and *E. R. Sinkler* and *Butler & Mitchell,* for respondent.

"After the collection has been made the bank becomes a simple contract debtor for the amount, less commissions if any have been charged. If the party has no deposit account, the bank simply owes him the money on demand." 1 Morse, Banks & Bkg. § 248; Marine Bank v. Fulton County Bank, 2 Wall. 252, 17 L. ed. 785.

"Proceeds received after the bank becomes insolvent are held in trust, and may be recovered in full." 1 Morse, Banks & Bkg. § 248 A. with cases cited; Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 Am. St. Rep. 778, 86 N. W. 21.

"Where money is deposited, and the bank has but a simple duty to perform with respect to it, and it is the intent of the parties that this duty is to be performed upon the identical money deposited,—like paying it over to a third person,—the deposit is special, and the bank is the mere agent for the performance of that duty." Cutler v. American Exch. Nat. Bank, 113 N. Y. 593, 4 L.R.A. 328, 21 N. E. 710; Plano Mfg. Co. v. Auld, supra.

If the agent after receiving the deposit and contrary to his instructions and to his duty, mingles their funds with his own, he is certainly in no position to deny that the relationship of debtor and creditor arises. Plano Mfg. Co. v. Auld, supra.

"The bank may be guilty of negligence and liable accordingly in employing or retaining an unfit person in the position of cashier." . . . As far as the question of mere negligence is concerned, the bank can plead its not knowing or having cause to suspect the integrity of its officers. Merchants' Nat. Bank v. Guilmartin, 88 Ga. 797, 17 L.R.A. 322, 15 S. E. 831.

"The burden of showing the circumstances of the loss rests upon the bailee, and unless the evidence shows the exercise of due care by him according to the nature of the bailment, he will be held responsible for the breach of his contract to return the property." Ouderkirk v. Central Nat. Bank, 119 N. Y. 263, 23 N. E. 875; Merchants' Nat. Bank v. Carhart, 95 Ga. 394, 32 L.R.A. 775, 51 Am. St. Rep. 95, 22 S. E. 628.

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest." Comp. Laws 1913, § 7147.

"If a debt ought to be paid at a particular time and is not, owing to the default of the debtor, the creditor is entitled to interest from that time by way of compensation for the delay in payment." Young v. Godbe, 15 Wall. 565, 21 L. ed. 251; Sullivan v. McMillan, 37 Fla. 134, 53 Am. St. Rep. 239, 19 So. 340; Wood v. Cascade F. & M. Ins. Co. 8 Wash. 427, 40 Am. St. Rep. 917, 36 Pac. 267.

Goss, J. This case was tried upon these stipulated facts: "It is stipulated by and between the parties to this action that on October 13, 1913, and all times mentioned in the complaint and answer in this litigation, the plaintiff was a foreign corporation, authorized to do business in the state of North Dakota, and the defendant was and is a domestic banking corporation organized under the laws of the state of North Dakota; that on or about October 13th, 1913, the Minnesota Mutual Life Insurance Company did send to the Tagus State Bank for collection two notes as follows: One note against O. J. Ness for $800 and interest. One note against Jno. J. Leon, for $900 and interest, the two notes amounting to $1,802; that the said notes were secured by real estate mortgages on lands in the vicinity of Blaisdell, then owned by O. J. Ness.

"It is further stipulated that on or about December 31, 1913, the said O. J. Ness paid to the Blaisdell State Bank of Blaisdell, North Dakota, the sum of $1,802 for the purpose of taking up said notes and mortgages above referred to, with instructions to send said moneys to the Tagus State Bank for such purpose; that thereafter and on December 31st, the Blaisdell State Bank did issue its cashier's checks for the sum of $1,802 which are marked exhibit A No. 1065, and B No. 1604, and which were sent to the Tagus State Bank with instructions that the same were for payment of the above-mentioned two loans; that the Tagus State Bank thereafter and between the 14th day of January and the 17th day of January, 1914, cashed such check for $1,802, and did make out and hold in its possession cashier's certificates in the sum of $1,802, being the certificates numbered 3479 marked exhibit C, and No. 3482 marked exhibit D; that on the cashier's

check register on which said exhibits C and D are recorded, there is a notation marked Ole J. Ness under exhibit C No. 3479, and the words Jno. J. Leon, loan under exhibit D, which said checks were made payable to the Minnesota Mutual Life Insurance Company; that thereafter and on or about January 24th, 1913, Jno. J. Brugman, who was then the cashier of said bank, did cash such certificate without indorsement by the Minnesota Mutual Life Insurance Company or any other indorsement, and did appropriate said moneys to his own use; that none of said sums have been paid by the Tagus State Bank to the Minnesota Mutual Life Insurance Company, to the Blaisdell State Bank, or to Ole J. Ness or to Jno. J. Leon; that Jno. J. Brugman was the cashier of the Tagus State Bank during all the times mentioned in this stipulation; that prior to the payment of the Leon and Ness notes the same were sent by the defendant to the Blaisdell State Bank for collection without knowledge or authority on the part of the Minnesota Mutual Life Insurance Company that the same had been done; that on or about July or August, 1914, the Tagus State Bank did get said note from the Blaisdell State Bank and returned the same to the Minnesota Mutual Life Insurance Company, being the same notes which were sent to the Tagus State Bank for collection; that no satisfaction of the mortgages securing the notes herein mentioned was ever made by the plaintiff or sent to the defendant or requested by the defendant, but that the Blaisdell State Bank did demand such satisfaction from the Tagus State Bank; that subsequent to February 1st, 1914, the plaintiff has repeatedly demanded payment of the said $1,-802 and interest from the Tagus State Bank; that Jno. J. Brugman, cashier of the Tagus State Bank, took the cashier's checks exhibits C and D and used the amounts which they represented to take up his own and his brother's checks, which came in from outside banks, and that no entry was made on the books of the transaction taking up said check with these cashier's checks marked exhibits B and E; that prior to this transaction Jno. J. Brugman, of the said Tagus State Bank, was believed by the public and the stockholders and the directors of the defendant to be an honest and upright officer, and so conducted himself so far as anyone knew, but that all such transactions were made and done with the knowledge and consent of W. J. Brugman, the presi-

dent of said bank, who also participated in a portion of the money converted on the cashing of said exhibits C and D."

Upon these facts judgment was ordered for plaintiff for $2,000.81 and costs. Defendant bank appeals.

Appellant's basis for denial of liability is in its claim that the collection made became in law but a special deposit in said bank giving rise to the relation of bailor and bailee, and that the bank is not liable for the embezzlement of such special deposit by its supposed honest officials, its cashier, done with the connivance of its president.

Decision of any question that would arise under a bailment is without the case because the facts stipulated show that no deposit was made with defendant's bank. It had authority to collect and procured collection of these notes. It reduced to cash the checks sent it by its collecting agent, the Blaisdell Bank. In possession of the funds, it became charged with a duty to remit said amount less commissions for its services. It placed these funds on deposit with itself. This is shown by the issuance of its two cashier's checks, which are equivalent to its draft on its general funds, and negatives to the mind of anyone familiar with banking usage any possible contention that these funds were placed on special deposit. The issuance of cashier's checks, necessarily drawn generally against its cash, evidenced that the other side of its book-keeping transactions had taken place, viz., that the sums had been deposited in its cash as general deposits subject to check. The purpose of the transaction was to swell its deposits temporarily, and that it might retain the funds until its cashier's checks returned for collection. Otherwise it would have drawn its draft on its correspondent bank and credited its cash with the sums deposited. In either event the effect is the same, except that by its system of cashier's checks it retained the money temporarily pending return of its checks for collection. In either case no relation other than that of debtor and creditor would be created. Citizens' State Bank v. Iverson, 30 N. D. 497, 153 N. W. 449. The bank did not agree to transmit the identical money received. In fact it received in all probability no coin or specific cash, but only its equivalent in credit on its books, or those also of its correspondent bank elsewhere. Its obligation to plaintiff was to transmit to it the same amount of money that it received less its commissions for services in collecting and remitting. No particular coin or currency was in

contemplation of this business transaction to be transmitted nor even dealt with or considered. Hence no special deposit was made, nor can such theory change the ordinary debtor and creditor relation that arose under the stipulated facts. Note to 1 Morse, Banks & Bkg. § 248; Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 Am. St. Rep. 778, 86 N. W. 21; Cutler v. American Exch. Nat. Bank, 113 N. Y. 593, 4 L.R.A. 328, 21 N. E. 710.

There is no substantial conflict in the theory of the law as to when deposits are general or special. But in the application of the theory under the peculiar facts of each case there is far from harmony in the decisions. Much of the discord arises from the change in relations of the parties pending the transactions and where rights of others intervene or are to be considered. Much of the law cited by appellants was declared in suits brought by claimants against receivers of defunct banks. It is here of no concern whether this plaintiff could follow this deposit in the hands of a receiver had this bank failed before remitting. Plaintiff asserts no such right, being content to treat this transaction exactly as the bank treated it, *viz.*, as a general deposit against which it drew its checks in plaintiff's favor. Whether the bank alone could in that way make plaintiff a general depositor against its wishes, so as to bar it from following its deposit as a trust fund or special deposit with plaintiff, denying the passing of any title thereto to its collecting agent, the bank, is not the question before us. The situation here is simple, and is merely whether the defendant, after creating by its act a general deposit and the relation of debtor and creditor with plaintiff, may then claim, after its cashier and president have by their trickery and dishonesty embezzled its funds to an amount equal to what plaintiff has so deposited, that a special deposit was made in order to found a claim thereon that its officers have embezzled a special deposit and not its own general funds. This sums up the contention made by defendant. No authorities can be found to support such a claim. It can not be allowed to thus defeat its liability.

But defendant asks: "If the misappropriation was not the act of the bank, how can it be held liable?" The act of the bank upon which its liability rests was *receiving* these funds in due course of ordinary banking for transmission and then making a general deposit of them as it did. What happened subsequent to this could not release it from

liability. Hence it is no concern of plaintiff that defendant's officials. embezzled its general funds afterward. Nor does it release the bank. from liability.

The note to 86 Am. St. Rep. at page 786, covers this situation by the following: "In the absence of such general agreement,. however, [an agreement to transmit funds received as a special deposit] 'the custom of bankers to credit customers with the proceeds of paper left for collection when the paper has been collected is universally recognized; and customers and bankers are presumed to contract and deal together in view of this usage. The law therefore authorizes the banker to credit the customer with the proceeds in lieu of making a specific delivery; and the necessary effect of an authorized credit is to create the relation of debtor and creditor between them from the time when the credit is given.' First Nat. Bank v. Bank of Monroe, 33 Fed. 408. From this it. follows that the bank takes title to the proceeds of a check or draft deposited with it for collection immediately upon crediting the depositor with the amount of such proceeds. In this connection the rights of a bank are different from and greater than those of other attorneys or agents, as is pointed out in Tinkham v. Heyworth, 31 Ill. 519. The bank occupies the position of an agent for collection until the proceeds are actually received and credited, thereupon it takes title thereto, and the relation of debtor and creditor takes the place of that of principal and agent,"—citing many cases. See also notes to 39 L.R. A.(N.S.) 847; 16 L.R.A. 516; and 32 L.R.A. 769, citing much authority, and 3 R. C. L. pages 632 et seq. where authorities are cited and explained. This was a general deposit made with it. This difference between the implied powers of a bank through custom and business convenience was the basic principle recognized and held controlling by this court in Schafer v. Olson, 24 N. D. 546, 43 L.R.A.(N.S.) 762, 139 N. W. 983, Ann. Cas. 1915C, 653. And to that extent that case is. authority here. See also the decision in State v. Bickford, 28 N. D. 36, 147 N. W. 407, Ann. Cas. 1916D, 140.

But assume this was a special deposit. It is stipulated that the president had knowledge of the misuse. There is no showing or fact stipulated to show that the president was considered and known as honest or otherwise. The contrary is the presumption. "From the loss of the property (the special deposit), actionable negligence is pre-

sumed." 3 R. C. L. 559. From the facts stipulated, it affirmatively appears that the bank or its directors were negligent in the selection of its managing head, and should be held liable on that ground, even accepting its claim that these funds were in fact and law a special deposit. Gray v. Merriam, 148 Ill. 190, 32 L.R.A. 769, 39 Am. St. Rep. 172, 35 N. E. 810, 1 Am. Neg. Cas. 478. "And the banker must prove the exercise of the degree of care required of him by the decisions in the jurisdiction in which the loss occurred and in which his liability is sought to be enforced," or respond in liability for even a special deposit. 3 R. C. L. 559, 560. The bank cashier embezzled this money with the knowledge of the bank, with imputed notice to the directors, the bank itself, of what was done and which makes it the act of the bank and estops it from questioning its liability. "Knowledge of a bank teller relative to the collection of money and the ownership of notes left with him for collection must be imputed to the bank, and notice to him is notice to the bank." 3 R. C. L. 475; McCarty v. Kepreta, 24 N. D. 395, 48 L.R.A.(N.S.) 65, 139 N. W. 992. The stipulation shows these funds went to cover the personal overdraft on the bank of its managing officers. Knowledge of this fact is imputed to the bank. The acts of its cashier and president in turning these funds over to the bank to repay their shortage with the bank estops the bank to claim otherwise than that it has plaintiff's funds, Citizens' State Bank v. Iverson, 30 N. D. 497, 153 N. W. 449. It has no defense against this suit. Judgment is affirmed.

CHRISTIANSON, J. I concur in the result.