WILLIAM GRIFFIN, APPELLEE, V. HATTIE E. CHASE ET AL., APPELLANTS.

FILED MARCH 1, 1893.   NO. 4731.

1. **Banks**: COLLECTIONS: TRUST FUNDS: INSOLVENCY: AGENCY. A national bank received certain real estate mortgages and notes for collection and to remit the proceeds to the owner when collected. This was done with all but two mortgages which were collected by the president of the bank. The bank failed soon after the last collection spoken of and had been insolvent for several months before that time. *Held*, That the bank was the agent of the owner of the instruments above set forth, and that the money derived therefrom was a trust fund which did not become a part of the assets of the bank, and that the receiver thereof had no right to said fund or any part thereof.

2. **Mortgages**: CONSIDERATION: COLLECTIONS ON SECURITIES BY PRESIDENT OF INSOLVENT BANK. *Held*, That a mortgage executed by J. O. C. and wife was made to secure moneys received by J. O. C.

3. **The right of the wife** to have certain real estate of the husband applied to the satisfaction of the mortgage before resorting to her estate or the homestead, held for further argument and consideration.

APPEAL from the district court of Fillmore county. Heard below before MORRIS, J.

*Charles Offutt*, for appellant Edward E. Balch, receiver.

*J. W. Eller* and *A. A. Whitman*, for appellant Hattie E. Chase.

*Charles E. Magoon* and *Will R. Gaylord*, for appellee.

MAXWELL, CH. J.

This is an action to foreclose two real estate mortgages given by the defendants Chase and wife upon lots 762, 763, 764, 765, 766, also lots 748, 749, 750, 751, 752, 753, lots 752 to 766 inclusive, and 748 to 753 inclusive in the town of Fairmont, in said Fillmore county, Nebraska. Of the above lots No. 767 is the sole property of Hattie E. Chase, the wife of J. O. Chase, and lots 765 and 766 are occupied as a homestead by Chase and family. The proof tends to show the following facts : In December, 1887, and January and February, 1888, the plaintiff, who resides in the state of New York, held a number of mortgages on real estate in Fillmore county which were payable at the Fillmore County Bank, and were then maturing. The evidence of these mortgage debts, together with releases, were sent by the plaintiff direct to the First National Bank of Fairmont with instructions to collect the amounts due in each instance and remit to him and deliver the respective releases on payment being made in full. In the progress of these transactions it appears that Griffin sent to this bank the following notes and mortgages :

Dec.  27, 1887, note of Campbell...................... $1,080 00
Dec.  27, 1887, note of Sikes........................... 1,296 00
Dec.  27, 1887, note of Brown.......................... 540 00
Dec.  27, 1887, note of Watt........................... 1,080 00
Dec.  27, 1887, note of Austin ......................... 540 00
Jan.  27, 1888, note of Heller......................... 756 00
Mar.  6, 1888, note of Logsdon........................ 459 00
Mar.  6, 1888, note of Holcomb....................... 1,080 00

        Total........................................ $7,075 00

The bank collected all of the above, except the notes of Logsdon and Holcomb, and remitted the same to the plaint-

iff. J. O. Chase, the president of the First National Bank of Fairmont, personally received the amount due on the Logsdon and Holcomb mortgages. This fact is important in view of the defense made by the bank in question and the wife of Chase. There was also a balance due on the Watts mortgage collected, of a few hundred dollars. The testimony tends to show that J. O. Chase was president of the bank from early in 1887 until the spring of 1888, and all of the above obligations were received by the bank while he was president thereof; that the bank stopped payment on the 10th of May, 1888, and had been insolvent for many months before that time; that on the 10th of August, 1888, or three months after the failure of the bank the mortgages in question were executed. A receiver was appointed for the bank, who was permitted to intervene in this action, and has answered in effect that the plaintiff was a general depositor and creditor of the bank and is not entitled to preference, and that he should be required to share *pro rata* with other creditors. Mrs. Chase, the wife of J. O. Chase, answers that the debt secured by mortgage is that of the bank and not of J. O. Chase. The lot above described is her individual property; that the other lots named, as a homestead, are now occupied by her as such. She also pleads a want of consideration, and that the mortgage was obtained by duress. On the trial of the cause the court found as follows:

"The court also finds that there is due to the plaintiff upon the notes set forth in said petition, which said mortgage was given to secure, the sum of $2,940, and that the plaintiff is entitled to a foreclosure of said mortgage as prayed only on the following of said lots, that is to say, on lots 767, which was the individual lot of the defendant Hattie E. Chase, and upon lots 766 and 765, which were the homestead property of the defendants J. O. Chase and Hattie E. Chase. The court finds that as to said lots the said mortgage gave a lien to the plaintiff for the amount

of said mortgage thereupon, and that the execution of said mortgage did not confer or pass any right or title to said lots, or any thereof, to the defendant Edward E. Balch, the receiver of the First National Bank of Fairmont; the court further finds that the making of said mortgages, as to the remainder of said lots, that is to say, as to lots 748 to 753 inclusive, and 764 to 762 inclusive, operate as a transfer of all of said lots, to-wit, lots 764, 763, 762, 748, 749, 750, 751, 752, and 753 to and for the use and benefit of the creditors of the First National Bank of Fairmont, and that as the receiver of the First National Bank of Fairmont the defendant Edward E. Balch is entitled to the same, and all thereof, for the use and benefit of the creditors of the First National Bank of Fairmont."

The defendants appeal. In the defendants' briefs the matter is discussed as though the plaintiff was a general depositor of the bank and hence the mortgages in question inure to the benefit of the bank. This contention is not sustained by the proof. The letter of the plaintiff of March 6, 1888, in regard to the Logsdon and Holcomb mortgages is as follows:

"WEST TROY, N. Y., Mar. 6, 1888.

"To Cashier First National Bank, Fairmont, Neb.

Inclosed I hand you for collection and remittance notes and mortgages of Samuel Logsdon and wife...... $425 00
Int. due Feb. 17, '88.............................. 34 00
                                                    ———————
                                                    $459 00
John Holcomb and wife...................................$1,000 00
Int. to Mar. 10, 1888.............................. 80 00
                                                    ———————
                                                    $1080 00

"A. Logsdon's money was on deposit at maturity of papers, his int. shd. recd. to that date. In all these cases please carry out faithfully the provisions of the papers. I do not know what to calculate in regard to some of these

fellows. I am told to send out papers and when they get there they are neglected.

"Yours,      W. GRIFFIN.

"Please acknowledge receipt.      W. GRIFFIN."

The testimony of Samuel Logsdon as to whom and when he paid the mortgages is as follows:

Q. Did you give a note and mortgage to William Griffin at one time?

A. Yes, sir.

Q. Did you ever pay that note and mortgage?

A. Yes, sir.

Q. How much was it?

A. Four hundred and twenty-five dollars principal.

Q. How much interest?

A. Thirty-four dollars, I think.

Q. When did you pay it?

A. About one month after it was due, I think about the 20th of March; it was due the 17th of February.

Q. To whom did you pay it?

A. J. O. Chase.

Q. How did you pay it?

A. I paid it in money.

Q. Did you pay anything besides the principal and interest?

A. I paid the exchange.

Q. What exchange?

A. It was the same as money; I placed coupon notes — the exchange was fifteen cents and then he charged me extra; I paid him the fifteen cents for the coupon and the rest I cannot tell you how much.

Q. State when you paid the money to Mr. Chase whether he said anything in regard to your paying exchange.

A. Yes, sir; he did.

Q. What was it?

A. I cannot tell you just what he said; I just paid him

fifteen cents and he charged me extra of course; I cannot tell you what he said.

Q. What, if anything, did he say about what he got out of it?

A. He said he just got his per cent for collecting, that was all he got out of it, and he never offered to do business for nothing, or something like that; I cannot exactly give you the words.

Similar testimony was given in regard to the payment of the Holcomb mortgage and interest. We think that the proof establishes the fact that the bank received the money in question of the plaintiff, as his agent, with directions to remit to him. The money was not to be deposited in the bank but sent at once. This simplifies the case very much. It is very clear that the bank was the agent of the plaintiff and that the relation of principal and agent existed between them. The bank therefore held the funds of the plaintiff as trust funds and they were never mingled with the funds of the bank with the plaintiff's consent.

In *Peak v. Ellicott*, 30 Kan., 156, where a party had paid to the cashier of a bank the amount of a note given by him to the bank, which the cashier claimed had been rediscounted in another town, but would be sent for and canceled, the bank soon afterwards failed without canceling the note. The court held that the money so received was a trust fund, which must be applied to the purposes indicated and that it did not become a part of the assets of the bank. To the same effect *Ellicott v. Barnes*, 31 Kan., 170.

In *McCleod v. Evans*, 66 Wis., 401, 28 N. W. Rep., 173, it was held that a banker who accepts for collection a draft, and in fact collects the money thereon, holds the same as trustee of the owner; and after his assignment for the benefit of creditors, the trust character still adheres to the funds in the hands of the assignee, irrespective of other creditors. (*Francis v. Evans*, 33 N. W. Rep. [Wis.], 93; *Anheuser-Busch Brewing Ass'n v. Morris*, 36 Neb., 31.)

Other cases to the same effect can readily be cited, but it is unnecessary. That these moneys were held in trust there is no doubt, and as such they did not belong to the bank or become a part of its assets. The receiver, therefore, has no interest in such moneys.

2. It clearly appears that J. O. Chase personally received about $1,600 of the money in question. There is no proof that he turned it over to the bank. He recognized his personal liability for the money by executing with his wife the mortgages in question. They were given, therefore, so far as the proof shows, to secure the debt of Chase and not of the bank. The objection of want of consideration therefore fails.

3. It is possible as between the wife as surety for her husband and creditors of the bank that her personal estate and homestead are liable only after the lots owned by J. O. Chase are sold. This phase of the case is not very clearly presented in either brief, and we will hear further argument upon it. Except as herein modified, the judgment of the court below is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.