## MONTANA–DAKOTA POWER CO., Appellant, *v.* JOHNSON, Superintendent of Banks, Respondent.

(No. 7,141.)

(Submitted June 27, 1933. Decided July 8, 1933.)

[23 Pac. (2d) 956.]

*Messrs. Hildebrand & Warren,* for Appellant, submitted a brief; *Mr. Raymond Hildebrand* argued the cause orally.

*Mr. Howard M. Lewis,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff furnishes light and power to the people of Plentywood. In November, 1930, it employed the Farmers' & Merchants' State Bank to collect its monthly bills and instructed the cashier of the bank to keep a record of daily

collections made on blank "collection statements" furnished, to which the "stubs" from customers' bills should be attached as the bills were paid, and directed that each third day the collection statement should be mailed to the plaintiff's office at Williston, North Dakota, with a draft for the full amount collected during the period. The plaintiff was not a depositor, and neither party intended that it should become a depositor under the arrangement made. For the services rendered the plaintiff agreed to pay the bank $25 per month and postage used.

For a time after assuming its duties, the bank placed the receipts from collections, whether in the form of money, checks or debit slips against depositors, in a cigar box, and, for the total of each day's receipts, made a cashier's check to itself as "collection agent," but, finding this method inconvenient, it was abandoned in December, 1930, and thereafter all collections were deposited and deposit slips made in the name of the plaintiff, to which was assigned a page in the bank's ledger, headed "Collection Acc't," and on which collections were entered as "deposits" and remittances as "checks and charges." The plaintiff was not advised at any time as to how the bank handled the funds, nor did it give any direction on the subject.

On July 3, 1931, the bank forwarded its draft for $19.08 and on July 6, one for $82.04; on July 7 it collected $253.76, and on July 8, $236.19. It closed its doors on July 9. The drafts mentioned were received by the plaintiff and presented in due course July 11, but were, of course, not paid. The state superintendent of banks became the liquidating agent of the bank, and, in due time, the plaintiff filed with him its claim and demanded that it be allowed as a preferred claim. Affidavits and counter-affidavits as to the agreement between the parties were filed, and on the proof adduced the claim was allowed only as a general claim.

This action was instituted to compel the allowance of plaintiff's claim as a preferred claim. Evidence was introduced, and thereon the trial court made findings to the effect that

the bank received payment of accounts due the plaintiff in specie, checks and by deductions from deposits; that there was no agreement that these actual collections be forwarded, but rather that the total be remitted by draft, whereas the money, checks and credits went into the general fund of the bank and were used by it in its general business. On these findings the court declared, as a matter of law, that the superintendent of banks had correctly ruled, and that the plaintiff was not entitled to preference. Judgment allowing the claim as a general claim followed. The plaintiff has appealed from the judgment. The only question presented is as to whether or not, on the undisputed facts, the court erred in its conclusion of law and judgment.

In cases such as this, "the claimant for the preference must establish three coexisting conditions: (a) That the transaction created the relation of principal and agent—not creditor and debtor * * * ; (b) that by the transaction the assets of the bank were augmented; (c) ability to trace the trust funds into the possession of the bank." (*McDonald* v. *American Bank & Trust Co.*, 79 Mont. 233, 255 Pac. 733, 734.) As there is no question but that the bank collected the amounts claimed, and it is conceded that the money so collected was on hand and in the bank at the time it closed its doors, conditions (b) and (c) were met.

(a) In an ordinary collection transaction, the party for whom the collection is being made is the principal and the collecting bank the agent for the purpose of collecting the amount due; the former cannot expect to be credited with the amount until it is paid, and, until then, the relation of principal and agent continues. (*State ex rel. Rankin* v. *Banking Corporation*, 74 Mont. 491, 241 Pac. 626; *State ex rel. Kelly* v. *Farmers' State Bank*, 54 Mont. 515, 172 Pac. 130.)

"As a general rule, after the collection * * * has been made, the bank becomes a simple contract debtor for the amount * * * and does not hold the proceeds as agent in trust for the depositor." If the party for whom the collection is made is a depositor in the bank, the sum will be placed

to his credit, in the absence of special instructions on the subject, but the fact that the party contracting for the collection is not a depositor does not alter this rule, for "if the party has no deposit account, the bank simply owes him the amount on demand." (2 Michie on Banks and Banking, 1416; *Tinkham v. Heyworth,* 31 Ill. 519.) Whether or not this retrogression from the relation of principal and agent to that of creditor and debtor takes place, depends upon whether or not the money was deposited in the collecting bank, and, if so, on the nature of the deposit. (*Peters Shoe Co.* v. *Murray,* 31 Tex. Civ. App. 259, 71 S. W. 977.)

If the principal directs that the proceeds be forwarded in specie, there is, of course, no deposit to be made, and if, in violation of its instructions, the bank deposits the money, the deposit is special, and the bank remains the agent holding the fund in trust. (*American Can Co.* v. *Williams,* 178 Fed. 420, 101 C. C. A. 634; *Hutchinson* v. *Bank,* 145 Ala. 196, 41 So. 143; *Continental National Bank* v. *Weems,* 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85.) So, also, if the fact is clear that it was the intention of the parties that the proceeds of the collection must be remitted immediately on receipt, the bank remains the agent of the owner of the paper or claim on which the collection is made (*In re Johnson,* 103 Mich. 109, 61 N. W. 352; *Griffin* v. *Chase,* 36 Neb. 328, 54 N. W. 572), and a trust relation arises if the direction is disregarded (*Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140, 220 Pac. 1114).

If a deposit is authorized, it must be either general or special, for there is no other kind of deposit; a special deposit becomes such by specific direction or agreement, or through circumstances sufficient to create a trust; otherwise the deposit is general and the bank merely becomes a debtor of the depositor; in the absence of such contract or circumstances, a deposit will be deemed a general deposit. If a trust fund is deposited in a bank having knowledge that it is a trust fund, this "circumstance" renders the deposit a special deposit (*Pethybridge* v. *First Nat. Bank,* 75 Mont. 173, 243 Pac. 569; *State ex rel. School District* v. *McGraw,* 74 Mont. 152, 240 Pac.

812), but, if the bank takes the deposit of such funds in good faith without knowledge of their character, the deposit is general. (*Montana-Wyoming Assn.* v. *Commercial Nat. Bank,* 80 Mont. 174, 259 Pac. 1060.)

If the principal directs that, on collection, the funds be not deposited or credited, the direction precludes a deposit, and the bank remains the agent. (*Guignon* v. *First Nat. Bank,* 22 Mont. 140, 55 Pac. 1051, 1097; *McDonald* v. *American Bank & Trust Co.,* above.)

But by directing the bank to remit by draft every third day, without direction that the bank hold the funds intact during the interim, the plaintiff authorized a deposit. ''That the intervals between the dates for remitting were brief is immaterial; * * * bearing in mind the custom of banks, it cannot be that the parties understood that the collections made * * * were to be made special deposits.'' (*Commercial Nat. Bank* v. *Armstrong,* 148 U. S. 50, 13 Sup. Ct. 533, 535, 37 L. Ed. 363.) In *First Nat. Bank* v. *Davis,* 114 N. C. 343, 19 S. E. 280, 282, 41 Am. St. Rep. 795, it is held that, although the agreement required remittance daily by draft, the parties ''must be presumed to have entered into the contract between them with the expectation and implied agreement that, in the transaction of the business provided for by that contract, each would act according to well known * * * customs in such business.''

The ''well-known custom of banks,'' of which the courts must take judicial notice, is to mingle money collected with its general funds and remit by cashier's check or draft on its general funds either in its own or another bank. The party receiving the check or draft must be deemed to have impliedly authorized the employment of the custom and ratified it by the acceptance of such paper; the deposit is general, and the relation that of creditor and debtor (*Ryer Grain Co.* v. *American Security Bank,* 147 Wash. 42, 264 Pac. 1000), for the paper ''evidenced that the other side of its bookkeeping transactions had taken place, viz., that the sums had been deposited in its cash as general deposits'' (*Minnesota Mutual Life Ins. Co.* v.

*Tagus State Bank*, 34 N. D. 566, 158 N. W. 1063, 1064, L. R. A. 1917A, 519).

Having, in effect, directed the bank to follow the "well-known custom" of banks and not to remit more often than every third day, thus impliedly directing that "the other side of the bookkeeping transaction" be also employed, i. e., that the money and checks received be mingled with the bank's other funds, the plaintiff must be deemed to have authorized a general deposit, and consequently was not entitled to preference.

The foregoing conclusions are supported by the great weight of authority. (See extensive note in *Plano Mfg. Co.* v. *Auld*, 14 S. D. 512, 86 N. W. 21, 86 Am. St. Rep. 776; *Cutler* v. *American Bank*, 113 N. Y. 593, 21 N. E. 710, 4 L. R. A. 328; *Butcher* v. *Butler*, 134 Mo. App. 61, 114 S. W. 564; *Bowman* v. *Bank*, 9 Wash. 614, 38 Pac. 211, 43 Am. St. Rep. 870; *State* v. *Southern Bank*, 33 La. Ann. 957; *Union Nat. Bank* v. *Citizens' Bank*, 153 Ind. 44, 54 N. E. 97; *Akin* v. *Jones*, 93 Tenn. 353, 27 S. W. 669, 42 Am. St. Rep. 921, 25 L. R. A. 523; *Hecker-Jones-Jewell Co.* v. *Cosmopolitan Trust Co.*, 242 Mass. 181, 136 N. E. 333, 24 A. L. R. 1148.)

The plaintiff urges that the fact that, for the first month or so, the bank kept the receipts from daily collections in a cigar box rather than making daily deposits, and thereafter, without notice to plaintiff, changed its system of handling the funds to that of deposit in a "collection account," rendered the deposit special, but the method of handling the funds was left to the determination of the officers of the bank; the representative of the plaintiff silently acquiesced in the direction of the bank's president to the cashier that it should be "handled in the easiest way," and the original method of handling the funds was not made known to the plaintiff. The undisclosed intention of the bank originally to treat the funds as held on special deposit, if the facts related would justify a finding that such was the result of the bank's action for a time, does not aid the plaintiff, as the mutual assent essential to the formation of a contract must be gathered from their out-

ward expressions and acts, not those undisclosed. (*Washington Shoe Co.* v. *Duke,* 126 Wash. 510, 218 Pac. 232, 37 A. L. R. 611.)

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN and ANDERSON concur.

MR. JUSTICE STEWART deeming himself disqualified, takes no part in this opinion.