# BURDICK *v.* SCHMITT

No. 3089

September 5, 1935.                    48 P. (2d) 762.

*H. R. Cooke,* for Appellant:

*Platt & Sinai,* for Respondent:

## OPINION

By the Court, TABER, J.:

This is an appeal from a judgment of the Second judicial district court, Washoe County, and from an order of said court denying a motion for new trial. Appellant was plaintiff in the action in the court below, and the original defendant was E. J. Seaborn, superintendent of banks. Leo F. Schmitt, as receiver of Tonopah Banking Corporation, was later substituted as defendant. In this opinion appellant will be designated plaintiff, and said banking corporation as the bank.

In October, 1932, appellant handed the bank, for collection, an investment certificate issued by the Investors' Syndicate of Minneapolis, Minn., for the principal sum of $2,500, which matured October 10, 1932. The certificate was in the name of plaintiff, who testified that it was her separate property. The bank sent the certificate to the Reno National bank, its Reno correspondent, with instructions to make collection. Collection was duly made by the correspondent bank, whereupon it notified the collecting bank that the collection had been made and the collecting bank credited with the amount of the collection. Within approximately a half hour after receipt of said notification, on

October 22, 1932, the bank had credited the amount collected, less collector's commission, expenses, etc., to the joint account of plaintiff and her husband, and placed in the bank's mailing box a duplicate credit advice addressed to plaintiff, in care of Wittenberg Warehouse Company, Tonopah, Nevada, the city of her residence, and the place where the banking house of the collecting bank was located. The Wittenberg Warehouse Company had a post-office box in the Tonopah post office, and plaintiff and her husband received their mail in that box. Plaintiff testified that her husband received the mail most of the time and that she received it sometimes. Said duplicate credit advice was in the words and figures following:

"The Tonopah Banking Corporation
　　　　　"Tonopah, Nev., 10/22 1932
"Mrs. M. W. Burdick
　"We credit your account as follows:

| Your letter, date or number | Amount | |
|---|---|---|
| Coll#3516 | | |
| Investors Syndicate | 2500 | — |
| Exchange chgd by Minneapolis Bank | 2 | 50 |
| | 2497 | 50 |
| Ins Reg & Postage | 1 | 17 |

　"The Tonopah Banking Corporation
　　　"Tonopah, Nevada
　　　"By C H, Cashier
　"Items not on this Bank credited subject to payment
　　　"Respectfully,
　　　　"The Tonopah Banking Corporation."

On October 24 or 25, 1932, while plaintiff's husband Dr. Ralph H. Burdick, was in the bank, there was a conversation between him and Mr. Carroll Henderson, at that time cashier of the bank. Mr. Henderson's testimony is to the effect that in that conversation he told Dr. Burdick that said collection had been made and the advice mailed. Dr. Burdick testified that all he could remember of the conversation was that Mr. Henderson

asked him whether he had received notice of the collection, and he replied that he had. Dr. Burdick further testified that at the time of this conversation he had just come from the post office and had the notice in his pocket, but that he had not as yet opened the envelope, and so had not seen the notice. He further testifies that he did not speak to plaintiff either about the notice itself or the conversation with Mr. Henderson until the afternoon of Saturday, October 29, 1932, at which time he told her that he had the notice of the collection in his pocket, "or what he supposed to be the notice." Plaintiff testified that it was at this last-mentioned time that the notice was handed her by her husband. Plaintiff testified that Dr. Burdick was injured on the day that he received the credit advice, and was confined to his room most of the time thereafter. This, she testified, accounted for his "not having a very good memory or thinking of business matters." It appears that plaintiff herself was not in the bank at any time between October 22 and November 1.

The bank, because of insolvency, closed its doors on Tuesday, November 1, 1932.

When plaintiff placed the investment certificate in the hands of the bank for collection, she asked the cashier to let her know when the collection was made. Mr. Henderson testified that at the time the collection was being placed with the bank, plaintiff mentioned that on payment of the collection she expected to apply some part of the proceeds on a note of her brother's held by the bank. This is positively denied by plaintiff. Plaintiff admits that she did not give any instructions as to what disposition was to be made by the bank of the proceeds of the collection. She testified that it was her intention to put such proceeds in postal savings. She does not claim, however, that anything was said to the bank about such intention, and the bank does not claim that plaintiff gave it any instructions to use any of the proceeds of the collection to apply on the note of plaintiff's brother.

It appears that it had been some twelve years since

plaintiff had closed an old account in the bank in her name only, but for a period of approximately twelve years next preceding the first of November, 1932, plaintiff and her husband had maintained a joint deposit and checking account so arranged that, as between them and the bank, either or both of them could at any time check on any part or all of the funds in said joint account, and that upon the death of either, any sum remaining in the account would be the sole property of the survivor. The wording of the written agreement between plaintiff, her husband, and the bank was as follows: "Any and all moneys in this account and any and all which may hereafter be deposited therein, is subject to withdrawal in part or in whole by either of us; and in case of the death of either of us, such account shall pass to and be withdrawn by the survivor. R. H. Burdick Marie W. Burdick." This joint account, on the bank's books, was as follows: "Burdick, R. H. or Marie W." The account usually did not show a large balance. On cross-examination of Mr. Henderson, it appeared that on September 2, 1932, the credit balance was $0.93, on October 3, 1932, $32.49, and on October 22, 1932, after the proceeds of said collection had been credited, $2,528.82. Plaintiff's exhibit 4, being bank statement of said account covering the period from June 17, 1932, to December 31, 1932, shows that the credit balance on the first of said dates was $61.80; that after June 17, 1932, and up to and including September 27, 1932, nine deposits were made, ranging in amounts from $4.05 to $300, and being, with the exception of the proceeds of said collection, the only deposits made between June 17, 1932, and December 31, 1932. During the same period, twenty checks were drawn on said account, ranging in amounts from $0.06 to $270.30. The credit balance on December 31, 1932, as shown by said bank statement, and including the net proceeds of said collection, was $2,497.39. Plaintiff and Dr. Burdick, from time to time, each made deposits in and checked on said joint account. Plaintiff testified that most of the everyday business transactions of herself and husband were conducted on

a cash basis, including most of their purchases of food, clothing, and other household necessities. She testified that the joint account in the bank was a small one carried by herself and husband as a matter of convenience.

At and for some years previous to the time said collection was placed with the bank, plaintiff and her husband had another joint bank account in a San Francisco bank. The testimony shows that there was less than $1,000 in this account.

The passbooks of the Tonopah bank contained a printed notice including the following sentences: "In receiving items for deposit or collection, this bank acts only as depositors' collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits." Neither plaintiff nor her husband had a passbook, their deposits being "made out on deposit slips."

On October 20, 1932, the bank, by letter, requested the Reno National bank to charge the former's account and forward it $7,000 in currency. A request for a further $7,000 was telegraphed October 28, 1932. Both of these requests were promptly complied with by the Reno National bank. Mr. Henderson testified that neither of said requests was made for the purpose of securing money with which to pay plaintiff the proceeds of said collection. Said requests, according to Mr. Henderson, had no connection with the collection, and were made only for the reason that the bank needed funds in the transacting of its general business.

After the bank had closed its doors on November 1, plaintiff told Mr. Henderson that she thought she was entitled to a preference to the extent of the net proceeds of said collection. Mr. Henderson told her that, in his opinion, she was simply a 'general creditor and not entitled to any preferences over other general creditors. Subsequently plaintiff filed a claim for preference, which was rejected, and later she commenced this action.

The gist of appellant's contention on this appeal is

that the bank had no authority, after being advised by the correspondent bank that the collection had been made, to credit the joint account of her husband and herself with the net proceeds of the collection. She contends that the bank, by crediting the joint account, as aforesaid, did not change its status from that of agent to that of debtor. Her position is that she was a stranger, because she had no account in the bank in her name only, and had not authorized the bank to open such an account for her. Appellant further argues that Mr. Henderson's testimony to the effect that the bank had followed its regular custom and usage in handling collections is not true in one important particular, namely, that the bank admittedly had never before, so far as shown by the evidence, handled any other collection under circumstances exactly similar to those in this case, for which reason, as she claims, no custom or usage could exist. Appellant further points out that the advice of credit mailed her by the bank was in error, because it was to the effect that the net proceeds of the collection had been credited to *her* account; whereas, in fact, they had been credited to the joint account.

Respondent contends that when the joint account was credited with the net proceeds of the collection, the bank became the debtor of plaintiff. He further contends that the bank complied with plaintiff's instruction to notify her when the collection was made. Respondent also takes the position that the bank handled the collection according to its established custom and usage, as well as in conformity with the rules of law.

■ It is a general rule of law that after a bank collection has been made, the relation of principal and agent ceases, and that of debtor and creditor arises; the bank becoming a simple contract debtor for the amount of the collection, less commissions and expenses. Montana-Dakota Power Co. v. Johnson, 95 Mont. 16, 23 P. (2d) 956; Paulk v. Union Banking Co., 46 Ga. App. 815, 169 S. E. 313; Shull v. Beasley, 149 Okla. 106, 299 P. 149, 77 A. L. R. 465; Citizens' Bank v. Bradley, 136 S. C. 511, 134 S. E. 510; Annotation, 24 A. L. R.

1152, 1155; Morse on Banks and Banking (6th ed.), sec. 248; Tiffany on Banks and Banking, 205, 206; 6 Michie on Banks and Banking, 8, 49; Selover on Bank Collections, sec. 121.

■ The general rule is also well established that one who selects a bank as his collecting agent is bound by any reasonable custom or usage of the bank, in the absence of special directions or agreement, whether he knows of such custom or usage or not. Montana-Dakota Power Co. v. Johnson, supra; Paulk v. Union Banking Co., supra; Luckehe v. First National Bank, 193 Cal. 184, 223 P. 547; Young v. Teutonia Bank & Trust Co., 134 La. 879, 64 So. 806, at page 809; Hilsinger v. Trickett, 86 Ohio St. 286, 99 N. E. 305, Ann. Cas. 1913D, 421; Jefferson County Sav. Bank v. Commercial Nat. Bank, 98 Tenn. 337, 39 S. W. 338; Selover on Bank Collections, sec. 10; 6 Michie on Banks and Banking, secs. 220, 221; 4 Cal. Jur. 263, 264; Tiffany on Banks and Banking, 208; 3 R. C. L. 634; 7 C. J. 587, 605, 612, 613.

■ In the absence of special instructions or agreement, the proceeds of a collection made by a bank become the property of the bank and a part of its general fund; and on the insolvency of the bank there is no preference in favor of the owner of the paper. In such cases it is the custom of banks, after the collection has been made, to credit the owner with the amount of the net proceeds. 4 Cal. Jur. 258; 7 C. J. 616.

■ In her testimony plaintiff expressly admitted that she did not give the bank any instructions as to what was to be done with the proceeds of the collection. The bank was, therefore, justified in mingling said proceeds with its general funds. We are of the opinion that the bank complied with plaintiff's instruction to notify her when the collection was made. The credit advice was promptly addressed and mailed to her, and she was in no wise injured by reason of the fact that it notified her that the net proceeds of the collection had been credited to *her* account, when in fact they had been credited to the *joint* account. The net proceeds of the

collection were placed at her disposal by crediting the joint account just as effectively as if she had had an account in her name only and said proceeds had been credited to that account. As between the bank on the one hand, and plaintiff and her husband on the other, either she or Dr. Burdick could have checked out any or all of said proceeds. All that plaintiff instructed the bank to do was to notify her when the collection was made. This the bank did promptly, and in the manner conforming to banking usages and practice. There can be no question that, had there been an account in the bank in the name of plaintiff only, the bank would have been justified in crediting the amount of the said proceeds to such account. There being no such account, the bank did that which, in our opinion, was the natural and proper thing to do. It could, of course, have telephoned plaintiff, asking her what she wished done with said proceeds, or it could have delivered the currency to her by a messenger; but neither of these courses is required in banking practice. Again, it could have mailed plaintiff a draft or cashier's check, but in that event she would have been in no better position than that in which she was placed when the bank credited the joint account, because, had such draft or cashier's check been mailed her, the relationship between the bank and her would have been only that of debtor and creditor.

All that was required of the bank, upon receipt of the advice from the correspondent bank that the collection had been made and the Tonopah bank credited with the amount of the net proceeds, was to act in good faith and use sound discretion. The course actually pursued by the bank was not calculated to, and did not in fact, mislead or injure plaintiff in any particular. The bank had never handled a collection exactly like the one which is the subject of this action. Not only that, but learned counsel have not, nor has the court after diligent research, found a case where the facts were the same as those in the case at bar.

In Morse on Banks and Banking (6th ed.), at sections 226 and 256, the author says: "If any point of law concerning any act in the business of collection is in doubt by reason of having never been adjudicated upon, if the bank using its best discretion should pursue the course which the courts subsequently declare to be improper and illegal, it will nevertheless be absolved from all liability for the results of its mistake. * * * Generally a mistake of law is no excuse, but when a question has not yet been decided, and there is no uniform practice to guide the bank, it is not responsible for mistaking *what will be the future decision of the law;* it is only the law that is established that is presumed to be known."

We do not say that situations might not arise in which legal injury might be done to a married woman by depositing the proceeds of a collection made for her by a bank in a joint account of her husband and herself; but, under the facts of this case, we hold that the acts of the bank were lawful and proper.

Appellant contends that she should be considered a stranger, because she had no account in her name only. It is our opinion, however, she was not a stranger, but a regular depositor.

■ Nor can we agree with appellant's view that her instruction to the bank, to notify her when the collection was made, was equivalent to an instruction not to deposit the proceeds of the collection to her credit. The case of Guignon v. First National Bank, 22 Mont. 140, 55 P. 1051, 1052, 1097, cited by appellant, differs from the case at bar. In that case the court expressly points out that "the record does not show that the defendant bank ever gave notice to the plaintiff, or credited him with the amount of the collection." The collection was made by the correspondent bank and credited. The collecting bank received notice twelve days later, and charged correspondent bank. Two days afterwards the collecting bank closed its doors. In the meantime, as above stated, the collecting bank had neither given plaintiff notice, nor credited him with

the amount of the collection. The Guignon case does appear to support one contention made by appellant. In that case plaintiff deposited a draft with a bank, with instructions to collect it and notify him. In its opinion the court said: "The draft was deposited with directions to collect and notify plaintiff, and not for credit." If it was intended by the court to say that an instruction by plaintiff to a collecting bank to make a collection and notify plaintiff includes within its meaning an instruction to the bank not to credit the amount of the proceeds of the collection, we cannot give our assent to such a view. We can see no justification for attributing to such an instruction any meaning beyond the plain import of the words themselves. The bank in the case at bar promptly notified plaintiff that the collection had been made, and followed up the notification later by personally ascertaining from Dr. Burdick that the credit advice had been received. If, as testified by plaintiff and Dr. Burdick, she did not receive the notice until Saturday afternoon, that fact was in no way attributable to any fault or negligence on the part of the bank.

We find no error in the record, and the evidence, in our opinion, justified the trial court in reaching the conclusion that plaintiff was not entitled to a preference over other general creditors.

The judgment and order appealed from are affirmed.